# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## STUART V. LANCASTER.

### APRIL 26th, 1888.

Absent, Richardson, J.

1. PRINCIPAL AND SURETY—*Discharge of surety.*—It is well settled that an agreement between creditor and principal debtor to extend time of payment for a definite period discharges the surety if made without his consent, even though the change be for his benefit. *Dey* v. *Martin*, 78 Va., 1.

2. IDEM—*New note—Burden of proof.*—It is also well settled that if holder of promissory note take a new note of principal debtor without surety's consent, the latter is discharged, unless the evidence clearly shows that the parties otherwise intended, and the burden of showing such intention rests on creditor. *Calloway's Ex'or* v. *Price's Adm'r*, 33 Gratt., 1.

3. IDEM—*Case at bar.*—The case here comes within the foregoing rules, and the surety was *held* to have been discharged.

Error to judgment of circuit court of city of Richmond, rendered July 11th, 1887, in an action at law wherein William A. Stuart was plaintiff, and Robert A. Lancaster was defendant.

The action was brought upon a protested negotiable note for $5,000, dated July 25, 1881, and payable four months after the date thereof to the order of Henry M. Mathews, at the Bank of Lewisburg, West Virginia. The note was made by the Greenbrier White Sulphur Springs company, a corporation chartered by the laws of West Virginia, and was endorsed by the said Henry M. Mathews, R. A. Lancaster, and W. A. Stuart, in the order named.

At the time the note was made, the Greenbrier White Sulphur Springs company was composed of the said Mathews, Lancaster, and Stuart, and one George L. Peyton, each being the owner of a fourth interest therein; and for the purpose of raising money for the company, three negotiable notes, payable at the same place, were made by the company, one for $10,000 and two for $5,000 each, aggregating the sum of $20,000. The first was endorsed by all the said stockholders as joint endorsers, making them all equally bound thereon; the second and third were endorsed in such a way as to apportion the liability thereon between the plaintiff and the defendant, the plaintiff endorsing the second note as prior endorser to the defendant, and the latter endorsing the third note as prior endorser to the plaintiff, so that, as between each other, the one endorsing first became primarily liable. The last-mentioned note was the subject of this action.

All the notes were discounted by the Bank of Lewisburg, and were subsequently protested for non-payment, and were eventually paid by the plaintiff. The note in suit lay under protest until January, 1882, when the plaintiff gave the bank a new note for the amount of it, executed by himself and others, the bank holding it (the original note) as collateral security. When the new note became due, it was renewed by a note of the springs company, upon which the plaintiff and others were endorsers, and the bank continued to hold the original note as collateral. All this was without the knowledge or consent of the defendant. At the maturity of the note, it was paid by the plaintiff, whereupon the original note was delivered to him by the bank as his property.

At the trial there was a verdict for the defendant, which the plaintiff moved to set aside as being contrary to the law and the evidence, but the court overruled the motion, and gave judgment on the verdict, whereupon the case, on a writ of error, was brought to this court.

*Harrison & Tucker*, for the plaintiff in error.

*W. W. Gordon* and *John W. Riely*, for the defendant in error.

LEWIS, P., after stating the case, delivered the opinion of the court.

Upon the facts disclosed by the record it is clear that the plaintiff is not entitled to recover. Nothing is better settled than that a binding agreement between the creditor and the principal debtor to extend the time of payment for a definite period discharges the surety, if made without his consent. And the reason is, that such extension of time varies the contract of the surety, and therefore operated to discharge him, even though the change be for his benefit.

Moreover, the surety is entitled upon paying the debt, when due, to be subrogated to the rights and remedies of the creditor; and if, by contract, the creditor has tied his hands and disabled himself from suing, so that if the surety were to pay the debt, he would not be free to sue immediately, the effect is to deprive the surety of a right to which, by virtue of the original contract, he is entitled, and consequently to discharge him. 2 Dan'l Neg. Inst'r, sec. 1312; *Dey* v. *Martin*, 78 Va., 1; *Alcock* v. *Hill*, 4 Leigh, 622; *Frazer* v. *Jordan*, 8 El. and Bl., 303 (92 Eng. C. L., 302); *Rees* v. *Berrington*, 2 Lead. Cas. Eq. 1867, and notes; Story Prom. Notes (sixth ed.) sec. 413.

It is also well settled that where the holder of a promissory note takes a new note of the principal debtor, payable at a future day, without the consent of the surety, the latter is discharged, unless the evidence clearly shows that the parties otherwise intended; for the legal effect of the arrangement, in the absence of an agreement to the contrary, is to suspend the right of action on the original demand until the maturity of the new note. And the burden of proof is, not upon the surety,

but upon the creditor, or those representing him, to show that such an agreement was made; or, in other words, to rebut the presumption arising from the taking of the new note.

This question was considered in *Callaway's ex'or* v. *Price's adm'r*, 32 Gratt., 1, in which Judge Staples, speaking for the court, said : " Whilst the mere taking a negotiable security, payable at a future day, does not, unless so agreed, operate as *a payment* of an antecedent debt, it does operate to suspend the right of action on the original demand until the maturity of the bill or note, unless it is made to appear that it was received simply as collateral security. It is a conditional satisfaction with respect to the principal, and with respect to the surety it is absolute, unless it plainly appears that the parties intended otherwise. \* \* \* In some of the cases it is held that taking the negotiable security creates a conclusive presumption of law of an agreement to suspend; in others it is held, and with better reason, that it is simply a question of intention,'" to be determined upon the particular facts of each case. Citing *Armistead* v. *Ward*, 2 Patt. and H., 504; *Blair & Hoge* v. *Wilson*, 28 Gratt., 165 ; *Putnam* v. *Lewis*, 8 Johns., 389; *Myers* v. *Wells*, 5 Hill, 463; *Rees* v. *Berrington*, 2 Lead. Cas. Eq. 1915 ; Brandt on Sur. and Guar., sec. 316.

The application of these principles is decisive of the present case. The evidence, certified in the bill of exceptions, shows that after the protest of the note upon which the action is founded, the plaintiff, who was the third and last endorser thereon, and who was, therefore, as between himself and the prior endorsers, a surety, gave his own note for the amount to the bank, the holder, payable at a future day, and that when the last-mentioned note fell due, it was substituted by a new note of the *springs company*, the principal debtor, payable at a future day, which note was subsequently paid by the plaintiff, whereupon the original note was delivered to him by the bank as his property.

Now, while it is true that the defendant was not discharged

from liability to the bank by the acceptance of the plaintiff's note, because it was not taken in payment of the original note, nor was the contract made with the *principal debtor* (*Frazer* v. *Jordan*, 92 Eng. C. L., 302; Story, Prom. Notes, 6th ed., sec. 415), yet when that note was substituted by a new note of the principal debtor, the springs company, the bank impliedly agreed with the company, without the consent of the defendant, to give time on the original note, and thereby discharged the defendant from all liability as endorser on the note.

The cashier of the bank, it is true, testifies that there was no contract with the company, or with any one, to give time on the note, but that it was simply held as collateral security until the new note was paid. But this does not at all affect the case, since, as we have seen, the taking of a new security implies an agreement to suspend the original debt, unless the parties *agree* that it shall *not* so operate; and no such agreement is proven in the present case. *Armistead* v. *Ward, supra.*

The further statement of the cashier that there was never a moment from the time the note fell due until it was delivered to the plaintiff that the bank did not have the right to sue on it, or that the defendant could not have paid it and sued the maker, is the mere expression of his own opinion, which is not supported by any *fact* to which he testifies. What were the views of the parties as to the transaction is not material. "The question is not what they believed, but what was the legal effect of the arrangement, in the absence of an express agreement that the acceptance of the new note should not suspend a right of action" on the original note. *Calloway's Ex'or* v. *Price's Adm'r, supra.*

The fallacy of the argument for the plaintiff is in assuming that when the new notes were given, the original note was his property. The question, it is insisted, is "whether, *the note being the plaintiff*'s, he had the right to use it as collateral security in borrowing money." But this is *not* the question. The note was the property of the bank until it was delivered

to the plaintiff upon the payment of the last note, when, for the first time, it became his property. There is no proof that either of the new notes was intended as a payment of the original note; but, on the contrary, the cashier of the bank testifies that "they did not intend to release the defendant as one of *their* (the bank's) securities, and for that reason did not deliver the note to the plaintiff until the last note was paid." In other words, the new notes were intended as conditional satisfaction only.

It is unnecessary, therefore, to decide what would have been the effect of pledging the original note as collateral, if the new note given by the plaintiff had been intended by the parties as a payment of that note. The truth is, strictly speaking, there was no pledging of the note as collateral at all; but it was simply held by the bank until the last note was paid, and at that time the defendant had been discharged. The judgment must therefore be affirmed.

JUDGMENT AFFIRMED.