Manning, Cushing & Co. v. Alger.

## MANNING, CUSHING & CO. v. ALGER.

| 78 | 185 |
|----|-----|
| 85 | 617 |
| 78 | 185 |
| 94 | 248 |
| 78 | 185 |
| 114 | 98 |

1. **Guaranty:** OF ACCOUNT FOR GOODS: PLEADING OF NOTE GIVEN IN SETTLEMENT: CONSTRUCTION. Defendant's intestate executed to plaintiffs the following writing: "If you will ship goods to I., I will be responsible for payment of same to the extent of six hundred ($600) dollars." Goods were shipped accordingly, and afterwards I.'s note was taken for $596.40 in settlement of the account. In an action in probate against the administrator of the guarantor, this note was set up, with the above guaranty, and $262.68 was claimed, after adding interest and deducting credits. Plaintiffs afterwards amended their claim by setting up two bills for the goods sold, amounting to $591.80, and alleged that the difference between this amount and the•face of the note was interest which had accrued, and that the note was taken only to change the form of the indebtedness. *Held* that the claim, as amended, grounded defendant's liability on the agreement to pay for the goods, and not on the note, to which his intestate was not a party ; and that it was not bad on demurrer because plaintiffs claimed that the *extent* of defendant's liability was the amount due on the note, which was more than was due on the guaranty.

2. ——: ——: EXTENSION OF TIME: DISCHARGE. In such case the first bill of goods was dated August 31, 1885, and at the head of it were these words: "Terms, net, ninety days from September 1." Also, "Terms: Four per cent. off ten days—three per cent. off thirty days—net, ninety days from September 1." The other bill was dated September 3, 1885, and at its head were these words: "Terms, October 1." Also, "Terms: Six per cent. off ten days— five per cent. off thirty days—net, four months." The note was dated December 15, 1885, and was payable sixty days after date. Defendant demurred to the claim on the ground that it showed on its face that plaintiffs had by the note extended the time of payment beyond that fixed when the goods were sold, and that for this reason the guarantor was discharged. *Held*—

(1) That the guaranty imposed no restrictions on plaintiffs as the time of payment on which they should sell the goods.

(2) That the "terms" printed on the bill-heads had no certain meaning in law, and that there was nothing on the face of the claim to show when the accounts matured. Wherefore it did not appear as matter of law that there had been an extension of the time of payment by the taking of the note. [BECK, J., dissenting.]

*Appeal from Montgomery District Court.* —Hon. A. B. THORNELL, Judge.

FILED, JUNE 6, 1889.

ACTION upon a claim filed in probate. There was a demurrer to the claim as presented, a iudgment for defendant, and plaintiffs appeal.

*E. P. Greenlee, C. E. Richards* and *E. L. Burton,* for appellants.

*W. H. Redmon* and *S. McPherson,* for appellee.

GRANGER, J.—To a proper understanding of the questions involved in the case it will be necessary to set out the claim as originally filed, with the amendment. They are as follows :

"The said Manning, Cushing & Co. claims of the said W. S. Alger, as administrator of said estate, the sum of five hundred and ninety-six and forty-hundredths dollars, as per the following statement, less credits, with ten per cent. interest : December 15, 1885, one promissory note, $596.40, with ten per cent. interest from date, and exchange, copy of same hereto attached, marked 'Exhibit A,' signed, J. T. Ingman, guarantied by D. S. Buchanan in writing, copy of which is hereto attached, marked 'Exhibit B ;' also copy of a letter annulling guaranty attached, marked 'Exhibit C.' Balance due July 18, 1887, $262.68." The note referred to in the foregoing statement is as follows :

"$596.40. VILLISCA, IOWA, December 15, 1885..

"Sixty days after date I promise to pay to Manning, Cushing & Co., or order, the sum of five hundred,

ninety-six and forty-hundredths dollars at First National Bank, Villisca, Iowa, with exchange and collection, value received, with interest at the rate of ten per cent. per annum from date. I further agree to pay a reasonable attorney fee in case suit is brought on this note, said fee to be taxed up as part of the costs of suit. It is also agreed that a justice of the peace may have jurisdiction to any amount not exceeding three hundred dollars. Due February 15, 1886.

"[Signed]                    J. T. INGMAN."

It will be noticed that the claim of plaintiffs is for goods sold to one J. T. Ingman, and the liability of the defendant estate is based upon letters by defendant's intestate in these words:

"VILLISCA, July 22, 1885.

"*Messrs. Manning, Cushing & Co., Ottumwa, Iowa.*

GENTLEMEN: If you will ship goods to J. T. Ingman, I will be responsible for payment of same to the amount of six hundred ($600) dollars.

"D. S. BUCHANAN."

"ASHLAND, OHIO, July 3, 1886.

"*Messrs. Manning, Cushing & Co.:* Some time ago I gave your man a guaranty for the goods J. T. Ingman, of Villisca, was buying of you. I will not be responsible for any that are shipped to him after this date. Not that I know anything at all detrimental to his credit, but, as I am not there now, I do not feel that I can do so any longer, as it is no advantage to me at all whether he buys of you or not. He seems to be having a good trade from accounts, and seems to be getting along better than many others during this close time. Hence, if you wish to ship him goods you can do so at your own option, but you are the only house that I guarantied the bills to.          Yours respectfully,

"D. S. BUCHANAN."

Afterwards the plaintiffs filed an amendment to their claim as follows: "Come now plaintiffs, and, as an amendment to their petition and claim, say that under the written guaranty given them by D. S. Buchanan, deceased, they sold, shipped and delivered to J.

T. Ingman, at Villisca, Iowa, certain goods and merchandise, as set out in two itemized bills hereto attached, marked 'Exhibits D and E,' and made part hereof; that said goods and merchandise were so sold and shipped to said Ingman under and on said written guaranty, copy of which is attached to plaintiffs' petition, and marked 'Exhibit B;' that said goods and merchandise aggregated the sum in value of five hundred, ninety-one and eighty-hundredths dollars; that said goods and merchandise were shipped on August 31 and September 3, 1885; that afterwards, to-wit, on the fifteenth day of December, 1885, to change the form of said indebtedness from that of an account to a note, said J. T. Ingman executed and delivered to plaintiffs herein his promissory note of that date for five hundred, ninety-six and forty-hundredths dollars; that the difference between the amounts of said two bills and the face of said note is interest accrued on said account before the execution and delivery of said note, thus guarantied by said D. S. Buchanan, deceased." The following exhibits are the bills of accounts referred to in the amendment, except that many items are omitted as not important.

"Exhibit D.

"OTTUMWA, IOWA, August 31, 1885.

*Mr. J. T. Ingman, Villisca, Iowa:* Bought of Manning, Cushing & Co., manufacturers, etc.    Terms, net, ninety days from September 1st.

Case. Stock No.

1 & 2.        205.        2 Cases Men's Grain Boots.
                                T. S. 6–10, 6–11, $42,                    $84

                                        Ctg. on 16 c.              1 00
                                                                    _____
                                                                    $517 00

"Exhibit E.

"OTTUMWA, IOWA, September 3, 1885.

*Mr. J. T. Ingman, Villisca, Iowa:* Bought of Manning, Cushing & Co., manufacturers, etc.    Terms, October 1st.

Manning, Cushing & Co. v. Alger.

Case. Stock No. Pairs.

| | | | | | |
|---|---|---|---|---|---|
| 1. | 654. | 24. | Wo's S. B. Ch. Pol. | | |
| | | | 3–7, $1.50. | - | $36 |

Ctg. .20

$74 80''

At the head of Exhibit D are these words :

" Terms { 4 per cent. off ten days,
3 per cent. off thirty days,
net, 90 days from Sept. 1st."

And at the head of Exhibit E are these words :

" Oct. 1st.

" Terms { 6 per cent. off ten days,
5 per cent. off thirty days,
net, four months."

To the claim, as amended, the defendant demurred, assigning three grounds which we will consider.

I. The ground first presented is, that the note represents, including interest earned, an amount greater than the value of the goods. An examination of the record shows, we think, that this claim, as against the defendant, is not based on the note, although the claim is that the defendant's liability is measured by the note. Defendant's intestate was not a party to the note,—that is, he never signed it,—and the note as to him would not evidence an indebtedness; and, as we understand, the note, after the amendment, is in the record only to show the entire transaction. The claim as against defendant is only upon his agreement to pay for the goods, and as to this point in the demurrer we have this question : If more is claimed than upon the face of the record appears to be due, will it defeat the claim ? We think not; nor do we think, with the facts as thus stated, appellee would controvert the question. As we understand, the position of appellee is grounded upon the theory that it is an effort to claim of the

1. GUARANTY: of account for goods: pleading of note given in settlement: construction.

defendant on the note, with the record as it was before amendment. Such a position would be far more tenable, but it seems to have been the purpose of the amendment to show, independent of the note, a liability, and to explain the giving of the note. It is impossible to discern any other purpose or motive for the amendment than to state facts constituting the liability of Buchanan on his original undertaking.

II. The second point presents the question that the claim seeks to hold the estate by reason of a guaranty, and that by the note the time of payment was extended beyond the time fixed for payment at the time of the purchase of the goods. This question has received most attention in argument, and is certainly the doubtful one in the case. It is necessary here to look to the original undertaking of Buchanan to pay for the goods. We think it imports an absolute undertaking to pay for the goods bought by Ingman, and upon such legal terms as might be agreed upon, not, however, to prevent as early a payment as Buchanan might wish to make. The letter imposes a restriction as to amount, and the imposition of a restriction in one respect evinces a purpose not to restrict in other respects. With this undertaking by Buchanan it was competent for the plaintiffs to sell Ingman, and make terms as to time of payment and interest upon payments deferred. The parties have used the word "guaranty" as indicating the kind of obligation assumed. Whatever technical term may be employed to designate the contract is of little importance, as the contract itself imports an absolute responsibility for payment. It is likely true that Buchanan, under his contract, could not be made liable for attorneys' fees in case of suit, for they are only recoverable in case of contract to pay them, and it may be true that the estate is in no sense liable on the note; but, as we have said, the state of the record shows that the purpose is not to recover by virtue of a liability on the note.

The legal theory of the plaintiffs undoubtedly was that the amount of the note was the measure of the

*2. ——: ——: extension of time: discharge.*

amount to be recovered of defendant under Buchanan's agreement to pay. For the purpose of the demurrer it makes no difference whether this position is correct or not; for, if any amount would be due, conceding the statements of the claim to be correct, the demurrer cannot be sustained. The only effect the note could have upon the contract as to Buchanan would be to postpone the time in which payment could be enforced as against Ingman, and it must be conceded that the note would postpone a right of action for the debt against him until its maturity. It is then important to inquire what the original agreement was between the plaintiffs and Ingman as to time of payment, and then inquire if there was such a change in the time of payment by receiving the note as to discharge Buchanan from his undertaking to pay. The claim of appellee is that the statements of account show the agreed time for payment when the goods were purchased. The record discloses no agreement as to time of payment, except such as may be known from these statements of accounts. Taking Exhibit D, and we have as follows :

" Terms, net, ninety days from September 1."
Also,

" Terms $\begin{cases} \text{4 per cent. off ten days,} \\ \text{3 per cent. off thirty days,} \\ \text{net, 90 days from Sept. 1st."} \end{cases}$

As to Exhibit E we have—" Terms, October 1."
Also,

" Terms $\begin{cases} \text{6 per cent. off Oct. 1, ten days,} \\ \text{3 per cent. off thirty days,} \\ \text{net, four months."} \end{cases}$

Counsel in argument present different views as to the legal meaning of these terms. As to Exhibit D the members of the court are not entirely agreed, but a majority incline to think a fair rendering is that, if payment is made within ten days, there should be a deduction of four per cent. from purchase price; if within thirty days of three per cent.; and, after ninety days from September 1, no deduction whatever. But what shall be done if payment is made after the thirty days,

and before the expiration of the ninety days, is not easily understood. Undoubtedly in commercial circles, and by the parties, these terms are understood; but they have no fixed meaning in law. They are to indicate what are known as "business" or trade "discounts," and the expressions are little known except in circles of trade. Taking Exhibit E, and we are still more confused; in fact, we are unable to reach anything like a satisfactory conclusion. If we shall say that the account was due October 1, what importance are we to attach to the provisions for payment in thirty days or four months? for, in either case, it would reach beyond October 1, the account being September 3. While it might be done, it seems a little strange, at the time of extending credit, to hold out such inducement for payment after a debt is due. There is a practical consistency in offering such inducement for payment before the claim is mature. Whatever might be said as to Exhibit D, we think it manifest that Exhibit E does not, as a matter of law, show that the account was due October 1, and, if not due then, the record does not show when it matured, or that the giving of the note extended the time; and the point urged in this ground of the demurrer is that the time of payment was wrongfully extended.

Our holding in the first division of the opinion that the note is not necessarily the basis of recovery against defendant disposes of the question presented by the third ground of the demurrer.          REVERSED.

BECK, J. (*dissenting*).—I. The plaintiffs seek to recover on a guaranty, and not on the ground that the intestate was a principal debtor. I need not inquire as to the effect of the letter called a guaranty, but, as it is so treated and called by plaintiffs, we will regard it as having that effect.

II. The claim or petition clearly shows that the indebtedness was extended upon sufficient consideration. The "terms," as set out in each of the accounts, show that the note was due more than four months after

the date at which the accounts were payable. But, if this fact be not shown by the words of the account to which we refer, the accounts were payable upon demand, and, of course, the note extended the time of payment until the day of the maturity of the note. It is a rule that the extension of time to a principal, upon a sufficient consideration, discharges his surety. Authorities need not be cited to sustain this familiar rule. The claim or petition of plaintiffs, as it is called, shows in the plainest terms that the time of the payment of the debt which the intestate guarantied was, upon a sufficient consideration, extended, and his assent thereto is not alleged, nor are other facts shown which would defeat his release by reason of the extension of time of payment. Therefore, upon the petition or claim as amended, there could have been no recovery. The district court, therefore, rightly sustained the demurrer. In my opinion the judgment of the district court ought to be affirmed.