FRANK HERMAN & CO., APPELLANTS, VS. HELENA WILLIAMS, EXECUTRIX, APPELLEE.

1. A plea to a declaration on a guaranty to pay for such goods as a third person might purchase, alleging that after default on the part of such third person to pay for the goods, the guarantee closed and settled the account with such person by taking his notes and extending the time of payment for the goods without the consent of the guarantor, presents a good defense if true.

2. Whether an engagement is a collateral agreement, or an original undertaking, is often a question of difficulty, but when the promise is to do a particular thing which another is bound to perform in the event he does not do it, the obligation is regarded as an original undertaking, and not a strict or collateral guaranty.

3. The position of a guarantor in an original undertaking to do something that another is under obligation to do, is in the nature of a surety as between himself and principal debtor.

4. Any obligatory agreement upon a good consideration between a creditor and a principal debtor to extend the time of payment for any definite period will discharge the surety if made without his consent.

5. The mere acceptance by a creditor from his debtor of a promissory note for a pre-existing simple contract debt, does not, as a general rule, in the absence of an agreement to that effect, extinguish the original demand, yet the acceptance of such note payable at a future time, will have the effect to extend the time of the payment of the debt until the maturity of the note.

6. It is error for a trial judge to read in the hearing of a jury a reported case, and state that the facts of the case read from were similar to the one then before the court, and that he adopted the decision in the case read as the law on the subject. In no more effective way could a judge intimate his opinion as

to the effect of evidence before the jury than by saying it was similar to that of an adjudged case in which the testimony was commented on as being sufficient to sustain a finding thereon.

7. Where an error has been committed by the trial court, but it affirmatively appears, and the appellate court has no doubt, after carefully considering the entire evidence and the record, that such error worked no injury or prejudice to the appellant the judgment will not be reversed on account thereof.

8. Where a plea, or subsequent pleading, responsive to a declaration or former pleading, sets up new matter in avoidance, a reply must be made to or issue joined on such pleading, but the ab_ sence of a *similiter* to a plea. or subsequent pleading, tendering an issue will not cause a reversal of the judgment when the parties voluntarily go to trial on the pleadings without raising any objection on account of the absence of such *similiter*.

9. The Circuit Court being invested by statute with authority to order the opening of depositions taken under a commission on interrogatories, an order made for that purpose on proper application will be deemed properly made, in the absence of any showing that the court acted improperly, or that any injury was done to either party thereby.

Appeal from the Circuit Court for Leon county.

STATEMENT.

Appellants instituted suit in 1889 against R. S. Williams, who died pending the suit, and it was revived against his executrix. The trial resulted in a judgment in defendant's favor, and an appeal was entered.

The substance of the various counts of the declaration is as follows: First, that in consideration that plaintiffs, at the request of defendant, would credit one M. R. Cohen goods to the extent he wanted, defendant would guarantee the payment for the same, and that plaintiffs delivered to Cohen goods to the value of $1,511.91, and he had not paid the same, except $794.78, by reason whereof defendant had become liable to plaintiffs for the balance. Second, that in

consideration that plaintiffs, at the request of defendant, would sell M. R. Cohen whatever goods he wanted, defendant undertook and promised to guarantee to plaintiffs the payment of whatever Cohen purchased from them, and that confinding in such undertaking and promise, plaintiffs sold and delivered to Cohen goods to the amount of $1,511.91, which had not been paid to plaintiffs, except the sum of $794.78. Third, that on the 23d of April, 1888, in consideration that plaintiffs, at the request of defendant, would sell to Cohen whatever goods he wanted, defendant undertook and promised to guarantee to plaintiffs the payment for said goods, and confiding in such undertaking and promise, plaintiffs credited and delivered to Cohen goods to the amount of $1,511.91, by reason whereof defendant had become liable to pay plaintiffs the same, except $794.78, which had been paid. Fourth, that on the 23d of April, 1888, in consideration that plaintiffs, at the request of defendant, would sell to M. R. Cohen such goods as he wanted, defendant assumed and promised that he would pay plaintiffs all such sums of money as such goods would amount to, and that afterwards, on the 25th day of April, 1888, at the request of defendant, plaintiffs sold to Cohen goods to the amount of $1,511.91, which sum has not been paid, except $794.78. Fifth, that on the 23d of April, 1888, defendant, in consideration that plaintiffs would, at his request, sell to M. R. Cohen goods to such an amount as he wanted, undertook and promised to guarantee the payment of whatever sum Cohen might purchase from plaintiffs, and in consideration of the premises, plaintiffs did, on the 25th day of April, 1888, sell to Cohen goods to the amount of $1,511.91, seven hundred and ninety-four and 78-100 dollars of which had been paid by him, by reason whereof defendant

became liable to pay the balance to plaintiffs whenever requested, and being so liable, he did, on the 27th of April 1888, undertake and primise to pay plaintiffs said sum of $1,511.91, and had failed to do so. Sixth, that on the 27th day of April, 1888, for a valuable consideration received from plaintiffs, the defendant agreed to and did guarantee the prompt payment of all purchases made by M. R. Cohen from plaintiffs on the 25th day of April, 1888, and that afterwards the sum of $1,511.91, less the sum of $794.78, remained unpaid from Cohen to plaintiffs on account of the goods, the payment of which had been requested of defendant and refused. Seventh, that in consideration that plaintiffs, at the request of defendant, would sell to Cohen such quantities of goods as he should want, defendant undertook to guarantee to plaintiffs payment of all such sums of money as should from time to time become due and payable to them from Cohen on account of said goods, and which should remain due after the expiration of such times from the sales and delivery of the goods as payments in the respect thereof should respectively become due, that in consequence thereof plaintiffs, on the 25th of April, 1888, sold to Cohen goods, in respect to which divers large sums of money became due and remained unpaid, of which defendant had notice. The common count for money found to be due from defendant to plaintiffs was added.

The first plea is, that the account sued on had been settled, and nothing was due plaintiffs thereon. Issue was joined on this plea. The second plea was demurred to, and the demurrer sustained. The third plea alleges that after default of Cohen in the payment of the account sued on, and on or about the 20th day of March, 1889, he and plaintiffs closed and settled the same, and the latter extended the time for the pay-

ment of the amount due on the account, by taking from Cohen thirteen promissory notes for different sums, aggregating the whole amount due on the account, payable at different dates, from May 14th, 1889, to November 5th, 1889, without the knowledge or consent or subsequent ratification of defendant. A demurrer to this plea was overruled, and plaintiffs replied that the account was not settled by Cohen in the manner alleged, or in any other manner, and that plaintiffs did not take from Cohen thirteen promissory notes in settlement of the account as alleged. A fourth plea alleges that after default in paying the account sued on, plaintiffs and Cohen, without the knowledge or consent of defendant, compromised and settled the account by plaintiffs taking from Cohen thirteen promissory notes, which were discounted by plaintiffs, and the cash received therefor from the Shawmet Bank of Boston, Mass. To this plea plaintiffs replied that they did not take from Cohen the notes mentioned in the plea in compromise and settlement of the account, but twelve promissory notes were sent to plaintiffs, and received by them as an accommodation to Cohen and defendant; that said notes were placed in the Shawmet Bank, and became due and payable before suit brought, two of which were paid, and plaintiffs called upon defendant for payment of amount due, but he failed to pay same; that plaintiffs took up and withdrew said notes from the bank, and were the holders and owners of the same, and were prepared to produce them to be canceled; and that the notes had not been paid to plaintiffs except as stated, and the money mentioned in the declaration was due and unpaid.

Defendant's rejoinder to the replication was, that he had no notice of the giving of said notes, and received no benefit for them, but they were received by plain-

tiffs to enable them the better to meet their own obli-
gations, and were placed by them in the Shawmet.
Bank beyond their control, and defendant was thereby
released from further responsibility, and the subse-
quent taking up of said notes did not revive the re-
sponsibility of defendant as guarantor of the open.
account.

There was a surrebutter on the part of plaintiffs, but
it alleged no new matter and contained denials of the
allegations in the rejoinder.

Defendant subsequently filed an additional plea, to.
the effect that plaintiffs, in consideration of the use of
said notes given by Cohen in raising money in bank,
and the further consideration of compounding the-
interest on the amount due from Cohen to plaintiffs,
they entered into a contract with him, without the-
knowledge or consent of defendant, to take said notes.
in settlement of said account, and did thereby extend
the time of payment and released defendant from his
guaranty by a change in the security and by placing
their claim against Cohen beyond their control until
he failed in business and made an assignment. The-
reply of plaintiffs to this plea set up no new matter,
but consisted of a denial of the allegations of the plea.

The case was submitted to. the jury on the foregoing-
pleadings. The other facts will appear in the opinion.

*R. W. Williams*, for Apellants.

*D. W. Gwynn*, for Appellee.

MABRY, C. J.:

One of the assignments of error insisted on by coun-
sel for apellants is, that the court erred in overruling-
the demurrer to the third plea. There are counts in
the declaration to which the third plea is. applicable-

that allege, as we construe them, an original undertaking on the part of appellee's testator to guarantee the payment of such goods as Cohen might purchase from appellants. The sixth count alleges a guaranty, made on the 27th of April, 1888, of the prompt payment of purchases of goods by Cohen on the 25th day of that month, but other counts allege a guaranty of the payment of such goods as appellants should sell to Cohen. Whether an engagement is a collateral agreement, or an original undertaking, is sometimes a question of difficulty, but when the promise is to do a particular thing which another person is bound to do in the event he does not do it, the obligation is regarded as an original undertaking, and not a strict or collateral guaranty. Nading vs. McGregor, 121 Ind. 465, 23 N. E. Rep. 283, S. C. 6 L. R. A. 686; Milroy vs. Quinn, 69 Ind. 406, S. C. 35 Am. 227; Roberts vs. Hawkins, 70 Mich. 566, 38 N. W. Rep. 575. The position of a grantor, however, even in an original undertaking, to do something that another is under obligation to do is in the nature of a surety as between himself and the principal debtor, and must be dealt with as such. Fellows vs. Prentiss, 3 Denio 512, S. C. 45 Am. Dec. 484; Roberts vs. Hawkins, 70 Mich. 566, 38 N. W. Rep. 575; 2 Brandt on Suretyship and Guaranty, section 343. It is the well-established rule of law that any obligatory agreement, upon a good consideration, between the creditor and the principal debtor to extend the time of payment for any definite period, will discharge the surety, if made without his consent. King vs. State Bank, 9 Ark. 185, S. C. 47 Am. Dec. 739; Fridenberg vs. Robinson, 14 Fla. 130; 2 Brandt on Suretyship and Guaranty, section 343. The grounds upon which this rule is based are substantial, as the creditor has no right of his own volition to change the

original contractual status of the parties and impair
any of the rights, legal or equitable, of the surety.

The third plea alleges that after default in paying
the account on the part of Cohen, the principal debtor,
appellants closed and settled the same and extended
the time of payment thereof by taking Cohen's notes,
without the consent of the guarantor, Williams. The
plea distinctly alleges that time for the payment of the
account was extended by taking the notes, and if the
allegation that the account was closed and settled
does not show a discharge and satisfaction of the same,
within the principle of Solomon vs. Pioneer Co-opera-
tive Co., 21 Fla. 374. S. C. 58 Am. Rep. 667, it is
clearly shown that an extension of time for payment
was given to Cohen without the consent of Williams.
This plea, if true, presents a good defense, and the
demurrer admits the facts pleaded to be true.   As we
will see further on that while the taking of the notes
for an antecedent simple contract debt does not in the
absence of an agreement to that effect discharge the
debt, it does extend the time of payment of the same
until the maturity of the notes.

It is claimed by counsel for appellants that no issue
was joined on the replication to the third plea, the
surrebutter to the replication on the fourth plea, and
the replication to the fifth or additional plea.   Appel-
lants went to trial on the pleading without raising the
objection suggested here.   It was held in Livingston
vs. Anderson, 30 Fla. 117, 11 South. Rep. 270, review-
ing former decisions of this court, that where a plea,
or subsequent pleading responsive to a declaration or
former pleading, sets up new matter in avoidance, a
reply must be made to or issue joined on such plead-
ing, without which it would be error to submit the
case to the jury, but the absence of a *similiter* to a

plea, or subsequent pleading tendering an issue will not cause a reversal of the judgment where the parties go to trial without insisting on it. St. Johns & Halifax R. R. Co. vs. Shalley, 33 Fla. 397, 14 South. Rep. 890. The replies to the pleadings upon which it is claimed no issues were joined did not set up any new matter in avoidance, but were simple denials of the allegations in the pleadings to which they refer. They amounted to nothing more than a tender of issue upon such pleadings, and the judgment should not be reversed because of the absence of a *similiter*, especially after the parties have gone to trial on such pleading.

No exceptions are raised to the relevancy or competency of any of the evidence introduced on the trial.

Appellants' testimony was taken under commission on interrogatories, and during the term of court at which the case was tried, but before the day of trial, the court, on motion of counsel for appellee, ordered the opening of the deposition. Objection is made to the order of the court directing the depositions to be opened. The court had the authority under the statute to make the order (McClellan's Digest, p. 460, sec. 7), and there is nothing before us to show that the court acted improperly in making the order, or that appellants were in any way whatever injured thereby. They offered the depositions in evidence and they were read to the jury without objection.

Exceptions were taken to the charge of the court to the jury, but before considering them, reference will be made to the evidence in the case. On the 23d of April, 1888, appellee's testator, R. S. Williams, addressed a letter to appellants, to the effect that his son-in-law, M. R. Cohen, was going to open a store in De-catur, Alabama, and desired to buy his stock from them, and the writer stated that he wanted appellants

to sell Cohen whatever he wanted, and that he (the writer) would guarantee that they would be paid whatever Cohen purchased from them. The letter stated that the credit to be given Cohen was to be his, and not the writer's. Cohen left an order with appellants on the 25th of April for $1,511.91 worth of goods, but they were unwilling to part with the goods without further guaranty from Williams. On the 27th of the same month Williams signed the following guaranty: "In consideration of one dollar to me in hand paid by Frank, Herman & Co., of Boston, State of Massachusetts, I do hereby agree and promise to guarantee the prompt payment of all purchases made by M. R. Cohen, Decatur, Ala., from the above said Frank, Herman & Co. on April 25th, 1888. * * Said guaranty is released and void as soon as the above is made." The statement of account filed with the declaration shows that some goods were sold to Conen after the date of the guaranty mentioned, but the testimony for appellants tend to show that all the goods sued for were purchased on the 25th of April, but that some of the goods were not shipped until a later date. Appellants' salesman, whose deposition was read in their behalf, stated that the goods were sold on four months' time from delivery. Cohen made payments on the account, and in November, 1888, appellants sent a statement of account of the balance claimed to be due to Williams, who, in acknowledging, on the 5th of the following month, receipt of the statement, said he had an understanding that when Cohen quit trading with and quit remitting to appellants he would be called upon to pay the balance, and that he noticed in the statement a remittance from Cohen on the 5th, as we conclude from the connection, of the preceding month.

Williams also stated that he was in the possession of a letter from Cohen saying that he would pay as quick as possible, and it was further stated in the letter to appellants that they need not be uneasy in regard to the indebtedness of Cohen, for which the writer stood good. On the 15th of March, 1889, without communicating with Williams on the subject, appellants accepted from Cohen twelve notes of different amounts, aggregating the total sum then due on the account, payable at different dates from the time of execution to the 15th day of November, 1889. Interest on the account from maturity at the rate of six *per cent. per annum* was included in the notes. A letter from appellants to Cohen in March, 1889, in reference to the execution of the notes, states: "It is true that we have a guaranty for your account, but you are aware that we can not meet our indebtedness with same. We enclose you statement of your account, with notes which please sign, and mark in same where payable. This will certainly give you all the time that you should require to pay us, and we expect you to meet same when they become due." The notes on their face do not recite that they were in settlement of the account, but the statement of account sent with them shows that they were for the total amount of the account with interest from maturity. Appellants endorsed the notes and discounted them at the Shawmet Bank in Boston, Mass., and Cohen paid two of them before suit brought, and the remaining ones were taken up by appellants and tendered by them for cancellation on the trial. Appellants wrote to Williams in May, 1889, that they had heard of an assignment by Cohen, and the letter states: "We hereby notify you that he owes us $757.88, closed by notes, of which we shall enclose memorandum, balance due us on bills purchased April

25th, 1888, for which we hold your guaranty. We therefore kindly ask you to send us check for amount due us under that guaranty, or you can send draft to the bank that holds the notes as they mature. That will save you protest fees." The letter further refers to the letter of appellants to Williams in November, 1888, and his reply on the 5th of December following, and calls on him for pay in accordance with the suggestions in his letter. The depositions of appellants and their salesman were read in evidence, and they all testify, in substance, that the account for the goods sold Cohen under the guaranty was not settled by the taking of the notes from him. At no time, they say, did the plaintiffs and Cohen close and settle the account. The plaintiffs did take twelve promissory notes of M. R. Cohen for different sums, aggregating the whole amount due, payable at different dates from May 14th, 1889, to November 5th, 1889. This was done by reason of the suggestion in the letter of R. S. Williams dated December 5th, before referred to, in order that the dates of payment might be fixed, and so that it might be determined when R. S. Williams could be called upon for payment according to his own ideas. The foregoing is their oral explanation of how the notes came to be taken from Cohen. They further testified that not only did appellants close and settle the account by taking the notes from Cohen, but that they did not extend the time of the payment of the same, and that the notes were at no time beyond appellants' control. They admit the notes were discounted at the bank, but say they had money on deposit there, and could at any time have obtained control of the notes.

Before commencing to give his charge the judge, in the presence of the jury, complimented the counsel in the case for the industry with which they had collected

the facts, and the ability displayed in arguing the law of the case. The judge stated that there were few questions on which the courts had made more decisions than on those involved in the case before him, and he claimed to be somewhat familiar with the decisions, because he had, while at the bar, examined them in a case in which he was engaged. He further stated that while the decisions were numerous and somewhat conflicting, he had found no variation from the rule that whenever a creditor so ties his hands by any arrangement with a principal debtor so that he could not be sued after the debt falls due, the surety was thereby discharged. The judge then read from the case of Fellows vs. Prentiss, reported in 45 American Decisions, what Chancellor WALWORTH and Senators Lott & Hand said on the subject on the facts of that case. The portions of the opinions in Fellows vs. Prentiss in which the facts of the case were stated and commented on were read by the judge in the presence of the jury, and he further stated that the facts of the case from which he read were very similar to those in the case on trial. Chancellor WALWORTH was said to be one of the most eminent judges this country has produced, and the senators mentioned were referred to as able lawyers, and the court, of which they were members, as the first in the country on commercial questions, and entitled to the greatest respect. The decision in the case referred to was adopted as the law on the subject. Addressing himself to the jury, the judge stated that whenever the creditor does any act which ties his own hands and prevents him from suing the principal debtor, he thereby discharged the surety. If the plaintiffs, after the money was due them from Cohen for goods sold him on the guaranty of Williams, took Cohen's notes payable at a future day, adding

therein the price of the goods and the interest up to the time when the notes fell due, without the consent of Williams, they thereby precluded themselves from suing Cohen until the notes fell due, and released Williams. Counsel for appellants excepted to the remarks of the judge to counsel, and the comments on the case of Fellows vs. Prentiss. The portion of the charge to the jury is also claimed to be erroneous.

The rule established in this State by legislative authority is, that the trial judge must not intimate his opinion as to the weight or effect of evidence submitted to the consideration of the jury. This court has steadily refused to sanction any violation of this rule, unless it was apparent that no harm was thereby done. Williams vs. La Peritiere, 32 Fla. 491, 14 South. Rep. 157, and cases cited. In no more effective way could a judge intimate his opinion as to the effect of evidence before him than by saying it was similar to that of an adjudged case commented on as being sufficient to sustain the finding of a jury. If a judge can be permitted to state the facts of one case in the hearing of the jury, and express his opinion as to their effect, and then declare the facts of the case before him are similar to the one commented on, he would, in effect tell the jury what were his views of the evidence before them. Moore & Co. vs. Robinson, 62 Ala. 437. The comments of the judge on the case of Fellows vs. Prentiss, reported in 45 American Decisions, was an invasion of the rule prohibiting the judge from charging upon the effect or weight of the evidence, and unless we can clearly see that no harm thereby resulted to the appellants, the decision appealed from can not stand. If competent testimony submitted to a jury is conflicting, it is clearly a violation of the rule for the court to intimate an opinion as to its effect, but where

there is no conflict in the evidence, and it is of such a character as to admit of no other conclusion than the one reached by the jury, such finding should not be disturbed because the trial judge has improperly charged the jury on the subject. In Metzger vs. State, 18 Fla. 481, the judge stated that there was no conflict in the evidence, and, although improper, it was held to be harmless because the record showed there was no conflict. An erroneous charge in the case of Brown vs. State, Ibid, 472, did not cause a reversal, because of the absence of testimony upon which a contrary finding was at all proper.

On the testimony furnished by appellants themselves we do not see that they can recover at all in the present case. The undoubted rule is, as already stated, that any binding agreement between the creditor and principal debtor, based upon sufficient consideration, for an extension of time of payment for a definite period without the consent of the surety or guarantor, whereby the creditor's hands are tied so that he can not sue and collect the debt until the expiration of the time granted, will discharge the surety or guarantor. 9 Am. & Eng. Ency. of Law, p. 83, notes 1, 4; 2 Brandt on Suretyship and Guaranty, sections 343, 344; King vs. State Bank, 9 Ark. 185, S. C. 47 Am. Dec. 739; Fridenburg vs. Robinson, 14 Fla. 130; Pfeiffer and Sullivan vs. Knapp, 17 Fla. 144. It is true, as a general rule, that the mere acceptance by a creditor from his debtor of a promissory note for a pre-existing simple contract does not, in the absence of an agreement to that effect, extinguish the original demand. May and Sloan vs. Gamble, 14 Fla. 467; Salomon vs. Pioneer Co-operative Co., 21 Fla. 374, S. C. 58 Am. 667. In such case no recovery can be had on the original cause of action unless the note is produced to

be canceled, or, in case of its loss, the establishment of such fact. Whether a note taken for an antecedent simple contract be in settlement and satisfaction thereof, is a question of intent, it seems, to be determined as other facts of a case. But while the taking of a note for a pre-existing simple contract debt does not, in the absence of a special agreement to that effect, extinguish the original debt, it will operate to extend the time of the payment of the debt until the maturity of the note. It was said in The Kimball, 3 Wall. 45, that "by the general commercial law, as well of England as of the United States, a promissory note does not discharge the debt for which it is given unless such be the express agreement of the parties; it only operates to extend until its maturity the period for the payment of the debt. The creditor may return the note when dishonored, and proceed upon the original debt. The acceptance of the note is considered as accompanied with the condition of its payment." This view was quoted with approval by this court in the case of Salomon vs. Pioneer Co-operative Co., *supra*. The following cases hold that the acceptance of a note for an antecedent debt operates to extend the time of payment of such debt until the maturity of the note: Glenn vs. Smith, 2 Gill & J. 493, S. C. 20 Am. Dec. 452; Yates vs. Donaldson, 5 Md. 389, S. C. 61 Am. Dec. 283; Mitchell vs. Hockett and Dickenson, 25 Cal. 538, S. C. 85 Am. Dec. 151; Fellows vs. Prentiss, 3 Denio 512, S. C. 45 Am. Dec. 484; Place vs. McIlvain, 38 N. Y. 95, S. C. 97 Am. Dec. 777; Putnam vs. Lewis, 8 Johnson 389; Manning, Cushing & Co. vs. Alger, 78 Iowa 185, 42 N. W. Rep. 643. The acceptance and holding of the note payable at a future day for a simple contract debt due, is a sufficient consideration for a postponement of the debt until the note falls due. The legal effect of such

an arrangement is to postpone the original debt, unless there is an express agreement to the contrary.

The letter of appellants to Cohen enclosing the notes for him to sign, and which is written evidence of the conditions upon which the notes were executed, states that it would give him all the time he should require to pay them, and they expected him to meet same *when they became due.* When appellants subsequently wrote to Williams for payment they stated that the amount due on the purchase of April 25th, 1888, had been *closed by notes,* memoranda of which were enclosd. The letter of Williams to appellants in December, 1888, can not be construed into a consent on his part for them to take the notes from Cohen and tie up their hands so shat they could not demand payment of Cohen until a future day. The letter seems to recognize a continuing guaranty under the letter of April 23d to pay for goods that Cohen might purchase, but it goes no further than to recognize Williams' liability to pay the balance when Cohen quit paying. According to appellants' own showing, no goods were purchased from them by Cohen after April 25th, 1888, and the bills for this purchase were due by account four months from delivery. There is nothing in the statements in the letter to the effect that Williams would pay when Cohen quit remitting, and that appellants need not be uneasy about the debt for which he, Williams, stood good, to justify a conclusion that the latter consented to the taking of the notes and the extension of time of payment of the account to a future date. The notes were commercial paper, and it is clearly shown, that they were given for the amount of the account, with interest thereon from the time when due until their maturity. That the notes were accepted by appellants and discounted by them in bank, is

·clearly shown by their own testimony. It is true they took up the notes, and were the owners and holders of them when suit was brought, but the facts in reference taking the notes payable at future dates are not disputed. It does appear that appellants testified that they did not extend the time of payment of the account by taking the notes, but this was their own conclusion of the legal effect of such a transaction. They show facts that do operate in law to extend the time ·of payment of the account, and their conclusions can not control the legal effect of their own acts. In passing upon the testimony in a case involving the question now before us, the court said, in :Stuart vs. Lancaster, 84 Va. 772, 6 S. E. Rep. 139: "The cashier of the bank, it is true, testifies that there was no contract with the company, or with any one, to .give time until the new note was paid. But this does not at all affect the case, since, as we have seen, the taking of new security implies an agreement to suspend the original debt, unless the parties *agree* that it shall not so operate; and no such agreement is proven in the present case. * * The further statement of the cashier, that there was never a moment from the time the note fell due until it was delivered to the plaintiff that the bank did not have the right to sue on it, or that the defendant could not have paid it and sued the maker, is the mere expression of his opinion, which is not supported by any fact to which he testifies. What were the views of the parties as to the transaction is not material. The question is not what they believed, but what was the legal effect of the arrangement, in the absence of an express agreement that the acceptance of the new note should not suspend the right of action on the original note." If the :appellants were not precluded from recovering a judg-

ment on the facts of the case submitted to the jury in any view of it, we would be disposed to reverse the judgment for another trial on account of the comments of the judge, in the presence of the jury, on the case, Fellows vs. Prentiss, but as Williams was clearly discharged from his obligation of guaranty by reason of the facts shown by appellants themselves, we see no reason why further costs should be incurred in trying the case. A verdict in favor of appellants on their own showing could not be approved by the court, and in view of this fact the comments of the judge referred to can not be otherwise than harmless.

The judgment will be affirmed, and it will be so ordered.