HARRY HOPKINS, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDENT IN ERROR.

1. Where a continuance was asked for on two grounds, first, that the defendant was too sick to go into a trial, and, second, that his leading attorney was necessarily absent on account of sickness, and it appears that he had been sick with malarial fever previous to the trial, but there is nothing to show that he was ill at the time of the

trial, and it does appear from his testimony that he had the full possession of his faculties, and that he was represented by three attorneys, the refusal of the continuance · presents no ground for a reversal.

2. It is not necessary in a criminal case for the venue to be proven beyond a reasonable doubt; and where the crime charged is embezzlement and the evidence shows that the property came into the possession and custody of a baggage master of a railroad on a run beginning in Duval county and ending in St. Johns county, and was appropriated by him on this run, and the jury could reasonably conclude from the evidence that the baggage master had the property in his possession in St. Johns county where it was his duty to deliver it when he com‑ pleted his run, he was properly indicted and convicted in St. Johns county.

3. Where the records of a railroad company are made in dupli‑ cate or triplicate, they are each primary evidence of their contents and each is admissible in evidence without producing the others or accounting for their absence.

4. Proof of handwriting is a matter of opinion, and where a witness identified a signature as that of the defendant, and subsequently testified that he had seen the defendant write his name, and the signature looked like his, no error is committed in permitting this evidence to go to the jury.

5. General objections to questions put to witnesses will not be considered on appeal unless the evidence sought is palpably prejudicial, improper and inadmissible for any purpose or under any circumstances.

6. Alleged errors in giving or refusing charges or instructions, and in the admission or rejection of testimony which do not weaken the effect of the admitted testimony, and which do not reach the legality of the trial itself will not be considered grounds for reversal where the evidence leaves no room for reasonable doubt of the defendant's guilt.

7.  In a criminal prosecution of a baggage master of a railroad company for embezzlement of the property of a passenger entrusted to such baggage master for delivery at tne destination of the passenger, all the members of the court are of opinion that it is the better practice for the trial court to excuse from the jury the employes of the railroad company, but the members of the court are equally divided in opinion as to whether the trial court can be held in error for refusing so to do, and the question is, therefore, not decided.

This case was decided by Division B.

Writ of error to the Circuit Court for St. Johns County.

The facts in the case are stated in the opinion of the court.

*Pope & Pope,* for Plaintiff in Error.

*W. H. Ellis,* Attorney General, and *Alex St. Clair-Abrams,* for the State.

HOCKER, J.  At a special term of the Circuit Court of St. Johns county, held in January, 1906, Harry Hopkins was indicted by the grand jury.  The indictment contained three counts:  The first count charges him with the larceny of one scarf pin, head of goddess, with crown set in brilliants, of the value of $50, one scarf pin, small sapphire pin, set with a ruby, diamond and other stones, of the value of $50, and one pair diamond cuff buttons of the value of $25, of the property, goods and chattels of the East Coast Railway Company.  The second count charges the larceny of the above property and one other scarf pin of the value of $50, total value $175, of the property of A. W. Masters, then

and there in the possession of the East Coast Railway Company. The third count charges Hopkins with the embezzlement of the property described in the second count, alleging that he was the servant and baggage master of the said railway company, and that by virtue of his employment he came into the care, custody, control and possession of a trunk which contained the above mentioned articles, the property of the said railway company, and of the value as set forth. The indictment charges these offenses to have been committed on the 4th of March, 1905, in St. Johns county, Florida. The foregoing is the substance of the charges set out in full in the indictment. The case was tried on the 5th of February, 1906, the plaintiff in error was convicted generally, and sentenced to the penitentiary for the term of five years. He seeks to reverse this judgment on writ of error.

A motion was made by the Attorney General to strike the bill of exceptions because of a failure to comply with Rule 103 of the Rules of 1873, or with Special Rules 1, 2 and 3 of the Rules of 1905, in its preparation. The bill of exceptions containing the proceedings on the trial is very inartificially prepared and seems to be nothing more than a copy of the stenographer's notes of the trial. Very many of the objections and exceptions to various rulings of the court are entirely too general to permit us to give them any critical examination, according to the established rules of this and other courts. But there are some matters contained therein which we may fairly consider, so far as they are properly assigned as error and argued in the briefs, and for that reason the motion to strike the bill of exceptions is denied.

The first assignment of error presented is based on the refusal of the court to grant an application for a contin-

uance, based on two grounds: First, that the defendant was too sick to go into a trial, and, second, that his lead-ing attorney, Mr. Pope, was sick and absent at Hot Springs, Arkansas. As to the first, it appears that Hop-kins had been quite ill with malarial fever, and had not entirely recovered from the effects of his sickness at the time of his trial, but there is nothing to show that he was too ill to go into the trial on the 5th of February. He did go into and through with it, and his testimony evinces that he had the full possession of his faculties, and that he presented his defense with more than ordinary ability and astuteness. He was defended by three able lawyers, in a manner that shows he lacked nothing which legal acu-men could do in his behalf. The record discloses nothing which supports the contention that he was in any way pre-judiced or his rights jeopardized by the refusal to grant a continuance, and we find no error in the ruling.

The next assignment argued is that no venue was prov-en. The contention is that if a larceny or embezzlement was proven, the offense was proven to have occurred in Duval county, and not in St. Johns. The facts summarily stated are that Hopkins was the baggage master of the East Coast Railway Company, making two trips a day from St. Augustine in St. Johns county, to Jacksonville, in Duval county, and back again. On the 3rd of March, 1905, the train left St. Augustine for Jacksonville in the morning about 9 o'clock, A. M., and left Jacksonville on the return trip at 9:55 A. M., and arrived at St. Augustine at 10:55 A. M. This train was numbered 27. The same train left St. Augustine at 6:10 P. M., and arrived at Jacksonville at 7:32 P. M., and was numbered 30. The same conductor ran on both trains, and the same bag-gage master, the defendant, Hopkins. Baggage from the North for St. Augustine was delivered to Hopkins at

Jacksonville. He had no assistant in the baggage car. It was his duty to deliver the trunks and their contents, which came into his possession as baggage master, in St. Augustine, in good order. A. W. Masters checked his trunk at Atlanta, Georgia, on the 2nd of March, 1905, for St. Augustine. The trunk was in good order. It was received by Hopkins on the morning of March 3rd, 1905, at Jack-sonville, in good order. It was delivered by Hopkins at the station in St. Augustine in apparent good order, and then delivered to Masters about noon on the 3rd of March, 1905, at the Ponce de Leon Hotel in apparent good order. Masters testified that the jewelry described in the indict-ment was placed by him in a box in the tray of the trunk at Birmingham, Alabama, as he was starting for St. Augustine, and that when he unlocked the trunk at the ho-tel about noon on the said 3rd of March, 1905, the jewelry was gone. Mr. Masters informed the railroad officials of his loss, and described the property so accurately to them that they were able to identify it by the description when they found it, as appears from the testimony of Sabaty. An investigation was instituted and it was discovered that Hopkins had sent a package by express from Jack-sonville to his mother at Carters, Florida (Polk County) on the night of 3rd of March, 1905, some time after seven o'clock, P. M. The package arrived at Carters on the 4th of March, and was delivered to Mr. Hopkins, the father of the defendant, who signed the receipt for his wife. The evidence shows that no other package was sent by express to them between the 3rd of February and the 4th of June, 1905. Detectives of the railroad company went to Car-ters, Florida, for the purpose of getting the contents of the package. After they had started Hopkins telegraphed his father at Carters, as follows: "St. Augustine, Florida, 4-22 (meaning April 22), 1905. Mr. Ed. H. Hopkins, Car-

ters, Florida. Arrested, charge having stolen two pearl studs, one diamond stick pin. Men coming to search house. You know what to do. Act at once. (Signed) Son Harry." The telegram did not arrive at Carters until after the detectives had searched that place and Mr. and Mrs. Hopkins had turned over to them a lot of jewelry, among which was the jewelry which Masters identified as being his property, and as having been placed in his trunk in Birmingham. The defendant, Hopkins, claimed that he had owned the cuff buttons for some time, and that he got the scarf pin from a negro named Martin along in February, 1905 (in the night time). Martin was an assistant to the baggage master on the trains which ran from Jacksonville to Miami. It does not appear that Martin was on Hopkins' train on that day, viz: the 3rd of March, 1905, or that he ever had any opportunity whatever to open Masters' trunk. Hopkins' trunk and room were searched and quite a lot of other jewelry was found in or traced to his possession, among other articles a pin worth $600, which he says he bought from the negro Martin for $5, and a pin identified as belonging to Masters. Hopkins admitted that he never informed the railroad officials or any one else of these alleged purchases of costly jewelry from the negro baggage handler Martin, or that Martin was trafficking in this suspicious manner in articles which necessarily raised a suspicion of their having been unlawfully obtained, even after he knew that Martin was suspected. Moreover, on his cross-examination on the trial, Hopkins was asked why, after he had agreed to confess when he went to Jacksonville, he denied taking some of the articles which he was asked about. His answer was: "Why, some of the things I didn't take, and I denied taking them. Some of the things I never seen." Here was a clearly implied admission that he had taken some of the things. The value of the articles mentioned in the in-

dictment and identified by Masters was shown to be over $20, and, therefore, it alleged a felony. In addition to these facts, after Hopkins was arrested, a detective named Howe was put in jail with him, and this detective testified that in conversations he had with Hopkins, the latter stated that he took a large lot of jewelry out of the trunks on the train during the time he was baggage master (winter and spring, 1905), and described to the detective his method of robbing the trunks. The detective gives the statements in great detail. Hopkins did not specifically deny these detailed statements, but in the course of a long explanation simply says he made no confessions to the detective. Hopkins also made incriminating statements to the sheriff and in the presence of the deputy sheriff, and that, too, after as he says the railroad people had broken faith with him in prosecuting him after they had promised not to do so if he would confess. The foregoing statements, however, are not strictly confessions (12 Cyc. 460). The confessions themselves were corroborated by the finding of the stolen articles where Hopkins said they were, and to that extent were proper testimony in spite of his contention that they were obtained by a promise of immunity from punishment. 6 Am. & Eng. Ency. Law (2nd ed.) 551. One of the pins described by Mr. Masters to the railroad officials was found in Hopkins' trunk at his boarding house, and other articles were found at his father's home. His explanation of his recent possession of the stolen property was unreasonable and incredible. To believe it it would be necessary to also believe that Masters was a clairvoyant and could accurately describe articles of jewelry he had never seen, and that the negro Martin had the supposed powers of a wizard, and could open trunks and take out their contents when he was at a different place from that of

the trunk.   We think the record establishes the foregoing facts and that these facts show that Hopkins stole   or embezzled the jewelry described in the indictment between Jacksonville and St. Augustine on the morning of the 3rd of March, 1905, on his run to St. Augustine, and that the jury could very reasonably conclude that he had them with him on his arrival in St. Augustine, where it was his duty to deliver the trunk and its contents. Wilson v. State 47 Fla. 118, 36 South. Rep. 580.   It is not necessary for the venue to be proven beyond a reasonable doubt. It is sufficient if the jury can reasonably infer from the evidence that the crime was committed in the alleged jurisdiction.   Smith v. State, 29 Fla. 408, 10 South. Rep. 894; McKinnie v. State, 44 Fla. 143, 32 South. Rep. 786.

The next assignment of error is based on the action of the court in admitting in evidence over the objection of defendant a carbon copy of the record made in Atlanta of the baggage checked out of Atlanta on the Southern train, made by Mr. Holland, the night baggage agent at the Union Depot, and covering the second of March, 1905.   It was objected to as being a copy and not the best evidence.   It seems that two or more duplicates of this record are made at once by means of carbon, and we think they may well be considered as duplicates, and as primary evidence.   17 Cyc. 517.   The same question occurs several times in this case and we shall not refer to it again.

The fourth assignment of error is based on the ruling of the court allowing the witness Hughey to answer this question: "Do you identify that signature on that manifest as Mr. Hopkins' signature?"   The witness answered, "Yes, sir."   Afterwards one of the attorneys for the defendant objected to this answer, because the witness would not swear positively to the signature.   There was

no motion made to strike the answer, and in his subsequent testimony the witness testified that he had seen Hopkins write his name, and that the writing looked to him like that of Hopkins. We discover no error in this ruling. Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938 (11th head-note).

The seventh assignment of error is˝ predicated on a question to the witness Watson that was not answered.

The twelfth and thirteenth assignments of error are based on rulings of the court overruling objections to questions put by the State to the defendant Hopkins. The stenographer's notes copied into the bill of exceptions only show general objections to these questions. One was, "we object to that, your Honor," and the other, "we object to that. It is improper." No particular ground of objection is shown. We can not consider such objections. Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656.

The sixteenth assignment is based on the ruling of the court refusing to give the following instruction to the jury at the request of the defendant, *viz*: "The court further charges you while the alleged confession of the defendant is proper to be considered yet should be received by you with great caution." Where confessions are relied on for conviction this court has held that the refusal to give such a charge is error. Anthony v. State, 44 Fla. 1, 32 South. Rep. 818. The trial judge *sua sponte,* charged the jury in this connection as follows: "You will take also into consideration any proof of the confessions made by the defendant considering the circumstances under which these confessions were made, and weigh that confession as you would the testimony of any other witness. That confession, gentlemen, goes to you. The court as-

certains, in the first place, as to whether or not it was under such conditions as to make it admissible, then, if the court decides that it is admissible, it goes to the jury having such weight as under all the circumstances surrounding the defendant at the time of the making—the reasonableness, or otherwise of the confession—as you think it is entitled to." The evidence leaves no room for reasonable doubt of Hopkins' guilt. The jury could not have acquitted the defendant without disregarding their oaths. The testimony we have referred to was all legal, and proper. Under these circumstances alleged errors in giving or refusing charges or instructions, and in the admission or rejection of testimony which do not weaken the effect of the admitted testimony or which do not reach the legality of the trial itself, should not be considered as grounds for reversal. Sullivan v. McMillan, 26 Fla. 543, 8 South. Rep. 450; Baird v. Steadman, 39 Fla. 40, 21 South. Rep. 572; Oppenheimer v. Guckenheimer, 39 Fla. 617, text 620, 23 South. Rep. 9; Herman & Co., v. Williams, 36 Fla. 136, 18 South. Rep. 351; Robinson v. Hyer, 35 Fla. 544, 17 South. Rep. 745; Wooten v. State, 24 Fla. 335, 5 South. Rep. 39; Hooker v. Johnson, 10 Fla. 198. Such errors if they existed would be errors without injury, and such are all the remaining errors properly assigned and argued except four, and these we shall now consider. They are assignments numbered 26, 27, 28 and 31. Under 31 it appears that Mr. Rogero was examined on his voir dire as a juryman, and said he had expressed an opinion as to the guilt of the defendant, and that it would take testimony to overcome that opinion. But he distinctly stated to the court that he would render a fair and impartial verdict on the testimony alone, irrespective

4—S. C.

of anything he had theretofore heard or read. In all other respects he was qualified, and we do not think the court erred in overruling the challenge to this juror for cause. Olive v. State, 34 Fla. 203, 15 South. Rep. 925; Andrews v. State, 21 Fla. 598 (3rd head-note.). Melbourne v. State, 40 South. Rep. 189.

This juror was challenged by the defendant peremptorily.

Assignments twenty-six and twenty-seven raise a more difficult question. Mr. Jeffords and Mr. Henry were examined as jurors on their voir dire, and it appears that they answered all the questions put to them satisfactorily, yet they said in answer to the court's questions that they were in the employment of the East Coast Railway Company. They were challenged for cause, and this challenge was overruled, and then the defendant challenged them peremptorily. Under assignment No. 28 it appears that Mr. Colee was thoroughly examined by the court on his voir dire as a juryman and answered the questions propounded thereby showing himself to be in all respects a qualified and unobjectionable juror. The defendant challenged Mr. Colee peremptorily. His challenge was disallowed because he had exhausted his challenges, and an exception to the ruling noted. Mr. Colee was sworn and sat on the jury. It is contended that inasmuch as the action of the court in improperly overruling the challenges to Messrs. Jeffords and Henry compelled the defendant to exhaust two of his peremptory challenges, he was thereby deprived of his right to challenge Mr. Colee. The questions involved have never been decided by this court that we can discover.

While all the members of the court are of the opinion that it is better practice to excuse jurors under these cir-

cumstances, yet we are equally divided as to whether the trial court can be held in error for refusing to do so, and the specific point is, therefore, not decided. We are unanimous, however, in the conclusion that upon the whole record there is no reversible error, and the judgment of the Circuit Court is, therefore affirmed.

Taylor and Parkhill, JJ., concur.

Shackleford, C. J., and Cockrell and Whitfield, JJ., concur in the opinion.