JULIUS SALOMON, APPELLANT, VS. THE PIONEER CO-OPERA-
TIVE COMPANY, APPELLEE.

1. When it is expressly agreed between a debtor and creditor that a negotiable promissory note or bill of exchange given by the the former to the latter should operate as a payment and satisfaction of an existing claim, the creditor cannot maintain an action on such claim, but will be confined to his remedy on such note or bill. The intention of the parties as to whether the bill or note was so given and received is a controlling element in the issue, and is a question of fact for the jury. May & Sloan vs. Gamble, 14 Fla., 495, approved.

2. A plea filed to the common counts in action on an open account for goods sold, &c., and alleging that before the action the defendant discharged and satisfied the plaintiff's claim by giving a draft on a third person for the full amount of the claim, and that the plaintiff accepted the same in full payment and satisfaction thereof, sets up a good defence in law, and is not demurrable. It is not necessary to expressly allege that the draft was negotiable, as the plea, in the absence of such allegation, is sufficient to admit proof of a negotiable instrument.

3. The allegation, in a plea to such an action, that the plaintiff endorsed and transferred the draft before it became due, and that the endorsee brought suit thereon against the defendant, and that there was a judgment therein against the endorsee, does not in the absence of the agreement that the draft shall operate as a payment or satisfaction of the account, constitute a defence to the action on the account : *non constat*, but that the assignor may have owned and held the draft by re-assignment, and this may have been the ground of defendants recovery against the original assignee.

4. When it appears on the trial that a negotiable bill or note has been given on account of the debt sued on, but there is no agreement by which it operates as payment or satisfaction, the plaintiff will not be permitted to take judgment unless he produces the note or bill and cancels it, or shows that it has been surrendered to the defendant or otherwise satisfactorily accounts for it.

5. The limitation of an action for "any article charged in a store account" is four years. It applies as well to wholesale as to retail

store accounts, and covers the cases of all store-keepers selling goods, and keeping accounts against purchasers and relying upon their books of account as evidence, and is not controlled by the mere locality of the store, and use to be made of the goods purchased.

Appeal from the Circuit Court for Jackson county.

This is an action of trespass on the case upon promises. The declaration is in the common counts for the price and value of goods sold and delivered " by the plaintiff to the defendant at defendant's request *in a store* account of defendant with the plaintiff," and for money paid by plaintiff for defendant, and on an account stated. The open account, or " bill of goods " sued on, is filed with the declaration. The defendant, Salomon, filed three pleas, as follows :

1st. That before the action he had discharged and satisfied the plaintiff's claim by giving it a draft for the full amount on J. W. Woolfolk, of Columbus, Georgia, payable ten days after date, which the plaintiff accepted in full payment and satisfaction of said claim, and which draft plaintiff endorsed and transferred before it became due, to one Isaac Joseph.

2d. The second plea is a reiteration of the first plea, adding thereto : " And the said Isaac Joseph brought suit upon said draft against defendant in the Circuit Court of Jackson county, Florida, which suit was tried and a judgment rendered in favor of defendant, which judgment has never been reversed and is still in full force."

3d. The third plea is set out in the opinion. The plaintiff demurred to each plea on the ground that it does not constitute a defence, and to the second plea on the further ground that it does not show that the suit mentioned in it " was between the plaintiff and defendant herein ; though a plea of *res adjudicata* does not show what the issue was

between the parties to the suit mentioned." The demurrer was sustained, and there was an assessment of damages by a jury, and final judgment for the plaintiff, and defendant appealed.

The other facts are stated in the opinion.

*D. L. McKinnon* for Appellant.

*J. F. McClellan, Liddon & Carter* for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The doctrine that a negotiable note or bill given by a debtor to his creditor for a pre-existing debt is *prima facie* an *extinguishment* of such debt, obtains in but few States. In May & Sloan vs. Gamble, 14 Fla., 495, it is said that Maine, Vermont and Massachusetts are the only States in which it has prevailed, and that in them "it has recently been modified to the extent that the giving and receiving of a new note for a prior indebtedness is presumptive evidence of payment." In *The Kimball*, 3d Wall., 45, it is asserted that, "by the general commercial law, as well of England as of the United States, a promissory note does not discharge the debt for which it is given unless such be the *express agreement* of the parties; it only operates to extend until its maturity the period for the payment of the debt. The creditor may return the note when dishonored, and proceed upon the original debt. The acceptance of the note is considered as accompanied with the condition of its payment. Thus it was said as long ago as Lord Holt that a ' bill shall never go in discharge of a precedent debt except it be part of the contract that it should be so.' The doctrine proceeds from the obvious ground that nothing can be justly considered as payment in fact but that which is in

truth such, unless something else is *expressly agreed* to be received in its place. That a mere promise to pay cannot *of itself* be regarded as an effective payment, is manifest." The presumption that a note or bill was taken in satisfaction may, where such rule obtains, be repelled by evidence that such was not the intention of the parties, and this evidence may arise from the general nature of the transaction as well as from direct testimony to the fact, (Ibid, 12 How., 243,) and in Maine a bill of exchange, not accepted by the drawee, was held not to be an extinguishment, nor *prima facie* payment of the original debt, and that the latter might be sued on. 61 Maine, 1.

In May & Sloan vs. Gamble it is declared that giving a note for an antecedent debt is not payment of it, unless the note be received under an express agreement, or under circumstances from which an agreement may be fairly implied to treat it as payment, or unless payment in fact result from it.

We find it asserted in the text books, that where the note or bill has been given and received under an express agreement that it shall operate in payment or satisfaction of the original claim, that the right of action on it is gone, and the party receiving it has his remedy only on such bill or note. 2 Parsons on Contracts, 135, 137, 194–6 ; 2 Chitty, 1135, note x, 1143. The absence of a new consideration does not avoid the agreement. Daniel on Negotiable Ins., §1259, puts it thus : " When a bill or note is taken for or on account of a debt, the question arises whether it is taken in absolute discharge of it, and operates as a complete merger, or simply as a collateral security or in suspension of the debt during its currency. The intention of the parties is the controlling element, and if there be any distinct agreement on the subject all controversy is silenced." In Sheeley vs. Mandeville, 6 Cranch, the second and third counts of

the declaration were for goods, &c., sold and delivered, the first count being on a promissory note signed by Jamison and alleged to be a partnership note made in J's. name. Mandeville in his first plea protested that the goods were not sold to the defendants jointly, and pleaded in bar the promissory note which is averred to have been *given and received for and in discharge* of an account for goods, &c., sold to Jamison, and that they were the goods mentioned in the declaration. It is said by Chief-Justice Marshall, " the note of one of the parties or of a third person may by agreement be received in payment. The doctrine of *nudum pactum* does not apply to such a case, for a man may, if such be his will, discharge his debtor without any consideration. But if it did apply there may be inducements to take a note from one partner liquidating and evidencing a claim on a firm which might be a sufficient consideration for discharging the firm. Since then the plaintiff has not taken issue on the *averment* that the note was *given and received in discharge of the account*, but has demurred to the plea, *that fact* is *admitted;* and being *admittted* it *bars the action for the goods*." In McConnell *et al.* vs. Murray, 2d Gilman, 707, a plea in abatement alleged among other things that the defendants and the plaintiffs having accounted together, one of the former, for them, executed in their firm name a negotiable note, and that the plaintiffs " *accepted this note in payment and final settlement of the account declared on.*" The plea was held bad for *duplicity* but the court say ' the allegation that the note *was received in payment and satisfaction* is material and traversible and if true would bar the plaintiff's right to recover, and cannot be treated as surplusage." In Moring vs. Mobile M. D. & M. Ins. Co., 27 Ala., 254, the third plea was that plaintiff released and discharged defendant before the suit was brought, and received the note of their co-defendant, Walker, in full pay-

ment and satisfaction of the account sued on ; and it seems. to have been treated as a good plea ; and such was the case in Abercrombie vs. Moseley, 9th Porter, 145, where the plea is stated to have been that Sims, one of the makers of the note sued on, delivered to the plaintiff a certain draft or order drawn on one Maddox for the payment of ———— dollars which was *accepted* by the plaintiff *in full satisfaction* and discharge of the note sued on. In Howard *et al.* vs. Jones, 33 Mo., 583, the plea denied the indebtedness for work and labor, " but averred that the note mentioned in said petition was accepted by plaintiffs as a full payment and discharge of all his indebtedness on the account in the petition mentioned." It passed without exception as to its sufficiency in law. In Smith's Leading Cases, Vol. 1, p. 454, Cumber vs. Wane, it is said that the correctness of the mode of pleading adopted in Sheeley vs. Mandeville cannot be questioned since Sard vs. Rhodes, 1 M. & W., 143 ; Sibree vs. Tripp, 15 N. & W., 23 ; Lyth vs. Ault & Wood, 9th Excheq., 669. In Sard vs. Rhodes the plea was that after the bill sued on became due the drawer of the bill made his promissory note for £4 and delivered the same to the plaintiff in full satisfaction and discharge of the bill, and plaintiff received and accepted it in full satisfaction and discharge. Baron Parke said " it is averred to have been accepted in full satisfaction and discharge of the bill. The plaintiff, therefore, takes it for better or for worse." The replication alleged that though the note was accepted in full satisfaction and discharge of the bill, yet that the note was not paid when due and still remained unpaid. Replication was held to be bad. In Blair & Hogan vs. Wilson, 28 Grattan, 165, it is held that while the giving of a check by a debtor to a creditor is generally presumed to be only a conditional or provisional payment of the debt for which it is given, yet such check may, by agreement of the parties,

be given and received in full payment and absolute discharge of the debt, and whether it is so given and received is a question of fact for the jury.

In Burdick vs. Green, 15 John., 247, there were several counts in the declaration in assumpsit. To the common counts, the plea was that after making the promises in those counts mentioned the defendant made and delivered to the plaintiff his promissory note for the same identical promises, and the plaintiff *received it in full satisfaction of such promises*, and that afterwards plaintiff endorsed and delivered the note to another. The plea was held bad. The allegation of the plea that the note was received in full satisfaction, does not seem to have called forth comment from the court. The reason of the ruling that the plea is bad given in the head note is as follows: " For the receiving of a promissory note, and endorsing it to a third person, does not extinguish the original cause of action provided the payee can show it to be lost, or can produce it on the trial to be cancelled," and the language used in the opinion being : " for we have seen that the *mere* giving of a promissory note or its endorsement   *   *   *   does not extinguish the original cause, &c., &c., of action, &c., &c., *   *   *." In view of the reasoning of this case, we do not think that it can be held as outweighing, if in conflict with, the authorities cited above.

The first plea alleges positively that the defendant discharged and satisfied the claim sued on by giving to plaintiff a draft, and that plaintiff accepted it in full payment and satisfaction of the claim.  By this demurrer the plaintiff admits not only the receipt of the draft, but its receipt in full payment and satisfaction of the claim. So upon the record both plaintiff and defendant admit it was so received, and consequently we have a case in which some-

thing else than money " is expressly agreed to be received in its place."

In Lewis vs. Lyster, 2 C. M. & R., 704, the plea alleged that a certain bill of exchange was received and accepted from defendant in full satisfaction and discharge of the bill sued on. It was demurred to for not showing that the bill so accepted was *negotiable*, but was held to be a sufficient answer though it did not appear that the bill was payable to order. Baron Parke said: " There is a sufficient averment of satisfaction by giving a new bill to the parties entitled, not ' for and on account ' of the first bill, but absolutely in *satisfaction and discharge* of it." Whereas, it is true that the words " to order," or " bearer," or some words of similar import, are essential to the *negotiability* of a bill of exchange, they are not essential to its validity as a bill. Daniel on Neg. Inst., 104, 105. It is not necessary for us to decide here whether or not a non-negotiable instrument can operate as satisfaction upon an express agreement between the parties. The plea does not inform us whether the draft is negotiable or not, or whether the defendant or a third person drew it. The plea is sufficient to prove, upon issue joined, a negotiable draft, even if it be true that one not negotiable cannot be the basis of such satisfaction.

II. The endorsement of the draft to Joseph, alleged in the first plea, and the action and judgment alleged in the second plea, do not in our opinion amount of *themselves* to a defence *non constat*, but that the plaintiff company might have been the owner and holder of the draft by re-assignment from Joseph. If it had been, and there was not a special agreement by which it had taken the paper in full discharge and satisfaction of the account, suit could be maintained on the open account, the draft having matured. The plea to be good, in the absence of such special agree-

ment, should go further and show that the draft was still outstanding in the hands of a third person. 2 Gilman, 707; 27 Ala., 258; Davidson vs. Bridgeport, 8 Conn., 472; Higby vs. Wheeler, 8 Cowan 77. In Harris vs. Johnson, 3 Cranch., 311, the point was not only that the note had been endorsed by the plaintiff, but that he had not re-assigned any property in it to the defendant, and the syllabus of the case is: " If a negotiable note has been received as a conditional payment, and has been passed to and is owned by a third person, the creditor cannot sue on the original contract." Black vs. Zacherie, 3 How., 433; Story on Prom. Notes, §405.

Where it appears on the trial that a negotiable bill or note has been given on account of the debt sued on, but there is no express agreement by which it operates as a payment or satisfaction, the plaintiff will not be permitted to take judgment unless he produces and cancels the note or bill, or shows that it has been surrendered to the defendant, or otherwise satisfactorily accounts for it. 1 John., 33; 27 Ala., 254; 2 Gilman, 707; 3 Gill, 350; 3 Wend., 37.

The mere failure of Joseph to recover in his action against Salomon on the draft, is not necessarily a bar to a suit on the open account. It may be, notwithstanding anything shown by the plea, that the possession and ownership of the draft by the plaintiff company at the commencement of Joseph's suit, or other ground of defence which would not have affected the company's rights, was the defence successfully interposed to such suit.

We cannot take time to discuss all the intricate questions which may be involved in the first and second pleas, as to the acceptance by the plaintiff of the defendant in full satisfaction and payment. The burden will be upon the defendant to prove the plea, and the issue is one, pecu-

liarly, for the decision of a jury. We think the second plea as it stands entirely unnecessary, and part of the first as indicated heretofore is surplusage. Still, as there is enough in each to constitute a defence the demurrer should have been overruled.

III. The declaration is for the "price and value of goods bargained, sold, and delivered by plaintiff at defendant's request in a store account of defendant with plaintiff." The plea is that "the cause of action sued upon was for goods, wares, and merchandise purchased by the defendant as a retail merchant, doing business in the town of Marianna, Florida, of the plaintiff as a wholesale merchant in the city of Columbus, Georgia, and the said cause of action did not accrue within two years before the commencement of this action."

Our Statute of Limitations (§10, p. 733, McClellan's Digest,) provides as follows: " Actions other than those for the recovery of real property can only be commenced as follows, * * * within *three* years ; * * * An action upon a contract obligation or liability not founded upon an instrument of writing, except *an action on an open account for goods, wares and merchandise* within *two* years. * * * *Third.* An action on an open account for goods, wares and merchandise sold and delivered, and an action *for any article charged in a store account*, shall not be barred until *four* years." The statute excepts actions on accounts for goods, wares and merchandise from the three year limitation prescribed by it for actions upon contracts * * * *not founded upon an instrument of writing ;* and then excludes actions for any article *charged in a store account* from the two years limitation for an action on an open account for goods, wares, merchandise sold and delivered, and makes the limitation four years. This we think is clear. We cannot strike out as " *surplusage* " any word of the statute

for the purpose of giving it a meaning different from what it has with such word in it. If the word " third " is essential to the meaning the statute has with it in, it is to be presumed that the legislature put it in for the very purpose which its presence subserves. Where, then, the open account is a store account, no article of goods, wares or merchandise is barred of action in less than four years. In California, the statute, which may have been before the author of our statute when he did his work, provides a limitation of *one* year for six classes of actions. * * * * * " 5th. An action on an open account for goods, wares and merchandise sold and delivered. 6th. An action for any article charged in a store account." Wood's Digest, 48. We have been unable to find any decision of the Supreme Court of that State construing the language quoted. A store is defined by Webster as " any place where goods are sold, whether by wholesale or retail," and a storekeeper, he says, is " a man who has the, care of a store." Worcester defines the former word as "a building or room in which goods of any kind are kept for sale—a shop for the sale of goods," and the latter word as " one who takes care of a store." " Shop " is defined by Webster as " a building in which goods, wares, drugs, &c., are sold by *retail*," and by Worcester, as " a place, building or room in which things are sold—a *store*."

In Barth vs. State, 18 Conn., 432, when a statute prohibited certain persons from keeping any *store*, *shop* or other place for the purpose of selling any wine or spirituous liquors to be drunk thereat the words *store* and *shop* were held to be of equivalent import " Considering," say the court, "the mode of using the words store and shop in this country, and the meaning usually attached to them, especially when they are applied to a place where goods are bought and sold, in which sense they are obviously used in

the act, we think they are to be considered, in that statute and also in this information, which is in the very words of it, as synonymous terms." In view of the above definitions and authorities we do not think we can hold that the word *store* means merely a *retail* store; this would be to substitute the word *shop* for it, and to adopt Webster's definition of shop and ignore the equivalent meaning given the two words by Worcester. There is nothing in the plea denying that the articles sued for are charged in a store account, or as the declaration puts it, "bargained, sold and delivered * * * in a store account." The fact that the defendant does business in the town of Marianna as a retail merchant, and purchased the goods to sell again in his retail store, and the plaintiff is a wholesale merchant in the State of Georgia, does not negative the idea of the goods being charged in a store account. The language of the statute covers any article of goods, wares or merchandise charged and properly chargeable in a store account. The provision is for the benefit of those who have stores, and keep goods therein for sale, and sell them, keeping accounts against the purchasers and relying upon their books of accounts in which the articles are charged as evidence in case of controversy. "A." has a dry goods store, he sells by wholesale, but not by retail; "B." buys from him, has an account at the store, whatever he buys is charged in the account. "C." has a dry goods store, he sells only by retail; "D." buys from him, has an account at his store, and whatever he buys is charged in the account. Where does the statute draw the line of distinction? The test is not whether the store is one of retail or wholesale, nor in the locality of the store, or the use made of the articles, or the quantity in which they are bought, but is, the vendue of goods by a store-keeper and have they been charged in his

books in an account against the purchaser? We cannot go outside of the statute and create an arbitrary test as to its meaning. The plea should have expressly alleged that the goods sued for were not charged in a store account.

We do not mean to be understood as saying that there must be an express agreement that the articles shall be charged in the account.

The judgment is reversed and remanded for such proceedings as may be consistent with this opinion and the rules of practice.