**Harold W. HOLCOMBE, Appellant,**

v.

**SOLINGER & SONS CO., Inc.,**
**Appellee.**

**No. 16103.**

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1956.

Howard R. Hirsch, Martin D. Von Zamft, Miami, Fla., Von Zamft & Kravitz, Miami, Fla., for appellant.

L. L. Robinson, R. D. Maxwell, Jr., Miami, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Harold W. Holcombe, was the defendant in the district court and there judgment was entered against him and in favor of Solinger and Sons Co., Inc., the appellee here and plaintiff below. The defendant had a financial interest in Atlantic Mattress Company but did not participate in its management or operation. Atlantic Mattress Company purchased mattress ticking and other materials from the plaintiff.

The Atlantic Mattress Company had, or so the defendant believed, substantial seasonal orders for the fall and winter season of 1950 and 1951. The plaintiff was reluctant to supply materials in the quantity desired on the credit of Atlantic Mattress Company. The defendant discussed with the president of the plaintiff the giving by the defendant of a guarantee of payment for Atlantic Mattress Company's purchases. The defendant testified that it was understood the guarantee would only cover the purchases during the next season. The president of the plaintiff testified there was no agreement that the guarantee should cover any series of invoices. The defendant wrote and delivered to the plaintiff the following letter:

"August 14, 1950

"Mr. Louis Solinger

Solinger & Sons Co.

349 Broadway

New York, N. Y.

"Re: Atlantic Mattress Co.

"Dear Mr. Solinger:

"This letter will serve to confirm the arrangement whereby you will supply the Atlantic Mattress with your line of materials on terms of 70 days subject to my personal guarantee of payment to which I agree.

"Yours very truly,

[Signed] Harold W. Holcombe."

Plaintiff continued to sell to Atlantic Mattress Company. Trade acceptances, three in number, negotiable in form, dated December 17, 1952, each for $2,-181.36, payable in thirty, sixty and ninety days, were accepted by Atlantic Mattress Company covering invoices of the plaintiff for and prior to July 15, 1952. Atlantic Mattress Company was credited with the amount of the trade acceptances on plaintiff's books of account. Mr. Louis Solinger, the President of the plaintiff corporation, testified that the trade acceptances "were in payment of the invoices totalling $6,544.08". Additional merchandise was sold by the plaintiff to Atlantic Mattress Company.

On the maturity of the first trade acceptance, January 17, 1953, it was paid. The second trade acceptance, due on February 17, 1953, was deposited in the plaintiff's bank and when presented to Atlantic Mattress Company was dishonored. The company was in financial difficulties. The defendant requested the plaintiff not to re-deposit the item. The acceptance was not again deposited and was charged on plaintiff's books to Atlantic Mattress Company. The defendant attempted to get the plaintiff and other creditors of the Mattress Company to execute a creditor's agreement or arrangement in March, 1953. The plaintiff declined to become a signer without a letter from the defendant that its signing would not jeopardize the guaranty. There is some conflict in the evidence as to whether, at the conference where the matter was discussed by the defendant and a representative of the plaintiff, the defendant declared that the plaintiff had no guarantee. The defendant signed a letter reading thus:

"Miami, Florida,
March 11, 1953.

"Solinger and Sons Co., Inc.
349 Broadway
New York, N. Y.

"Dear Sirs:

"It is understood and agreed that your signature to a settlement agreement to the Atlantic Mattress Company will in no way jeopardize any guarantee signed by me that is now in force.

"Yours very truly,
[Signed]   Harold W. Holcombe"

The efforts to rescue Atlantic Mattress Company were not successful. It was liquidated in bankruptcy. The third trade acceptance was dishonored on March 17, 1953, and in the same month the plaintiff received $1,489.60 as a bankruptcy dividend on Atlantic Mattress Company indebtedness. The action, which occasioned this appeal, was then brought by the plaintiff on the guarantee for the indebtedness owed by Atlantic Mattress Company, including the two unpaid trade acceptances, and the unpaid amount of the sales of merchandise made subsequent to July 15, 1952, by the plaintiff to Atlantic Mattress Company. The case was tried before the court and a jury. The evidence showed obligations of Atlantic Mattress Company to plaintiff of $9,178.06, of which $4,362.72 was the amount of the trade acceptances and $4,815.34 was the remainder of the debt. Against these amounts there was a credit for the bankruptcy dividend of $1,489.60. The court's instructions outlined the conflicting contentions of the parties and submitted to the jury for its determination the following questions:

"1.   Did the parties intend to enter into a continuing contract of guarantee or one limited as to time?

"2.   Did the plaintiff rely on the guarantee in extending credit to the Atlantic Mattress Company for the shipments which it claims were not paid for?

"3.   Is there an indebtedness in any amount owed to the plaintiff by the Atlantic Mattress Company?

"4.   If you so find, what is the extent of such indebtedness?

"5.   Were the trade acceptances received in full payment of the then existing obligations?

"6.   What portion, if any, of such indebtedness comes within the terms of the guarantee arrangement which you find existed between the parties?"

An instruction was requested by the defendant that the amount of the trade acceptances be deducted from the plaintiff's claim because received as payment or because the trade acceptances varied the terms of the guarantee, or both. The instruction was refused. The jury returned a verdict for $7,688.46 plus interest from July 9, 1953 (the date of the demand). The defendant moved for a new trial and for a remittitur, each on the grounds that the defendant, as guarantor, was not, as a matter of law, liable for the amount of the trade acceptances because they were accepted in payment,

they extended the time for payment, and prevented the guarantor from collecting from the debtor. The motions were denied. These questions, posed in different ways at different stages of the trial, are presented for our determination. The question as to whether the guarantee was continuing or limited as to time is not before us and the defendant is apparently reconciled to the answer given by the jury in its verdict.

■ Since this is a case from the District Court of the Southern District of Florida with Federal jurisdiction dependent upon diversity of the citizenship of the parties, the substantive law of the forum is the law of Florida. The letter agreement of guaranty was executed and delivered in New York by the defendant, then apparently residing in New York and doing business there, to the plaintiff, a New York corporation doing business in New York. The agreement guaranteed payment for materials to be furnished by the plaintiff to Atlantic Mattress Company which had its place of business in Florida. The guarantee agreement was both made in and was to be performed in New York. There might have been, it seems, a question raised as to whether the liability upon the guaranty was to be determined by the law of New York or the law of Florida. In 1949 the Florida legislature enacted the Uniform Judicial Notice of Foreign Law Act. Among its provisions are:

"(1) Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States.

"(2) The court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information.

"(3) The determination of such laws shall be made by the court and not by the jury, and shall be reviewable.

"(4) Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise." Laws of Florida, Acts 1949, Ch. 25110, F.S.A. § 92.031.

■■ The statute applies to appellate courts as well as to courts of original jurisdiction. Lanigan v. Lanigan, Fla., 78 So.2d 92. "However", as the Supreme Court of Florida said in a later case,

"the Act does not operate automatically in every case. On the contrary a party intending to take advantage of its provisions by asking that judicial notice be taken of a foreign law has the obligation to give reasonable notice of that intention to the adverse parties, either in the pleadings or otherwise. Subparagraph (4) of the Act so provides. Further, a party invoking the privileges of the Act is required to have the record reveal that fact and to have the record show the authorities which will be relied upon with reference to foreign law. This procedure enables each party and counsel to select the authorities he wishes to have considered by the court, and results in a record which contains a clear presentation of the issues to assist the court in its decision. This procedure must be followed by any party desiring to assure himself of application of the benefits of the Act." Kingston v. Quimby, Fla., 80 So.2d 455, 456.

Our review of the authorities leads us to the conclusion that the applicable substantive law is the same in both New York and Florida, at least to the extent required for our decision. Such being our conclusion, we are relieved of any concern as to which law governs.

The general rule is thus stated:

"An extension of the time of payment of the principal obligation, if

shown by a binding agreement between the creditor and the debtor, and not consented to by the guarantor, has the effect of releasing or discharging the guarantor from liability on the contract of guaranty. Within the purview of a statute which declares that an extension of time shall discharge a person who is 'secondarily liable', a guarantor is held to be one who is thus liable for payment of an obligation.

"While the guarantor is not released or discharged by the fact that the creditor has accepted a note from the debtor, yet, if the agreement between debtor and creditor has had the effect of extending the time of payment of the debt, the guarantor's liability is extinguished. Thus, where it appears that the creditor has taken from the debtor, without the consent of the guarantor, a note or other instrument which is payable at a future date and which, according to the agreement between them, suspends the creditor's right of action against the debtor until maturity of the instrument, the conclusion is that the guarantor is relieved of liability." 24 Am.Jur. 932, Guaranty § 90.

■■ By the law of New York an extension of time given by the creditor to the principal debtor releases a guarantor. Bank of United States v. Andron, 155 Misc. 21, 277 N.Y.S. 594; Siedentopf v. Braune, 273 App.Div. 791, 75 N.Y.S.2d 326. Such is also the rule in Florida. Solary v. Stultz, 22 Fla. 263; Frank v. Williams, 36 Fla. 136, 18 So. 351; Clark v. United Grocery Co., 69 Fla. 624, 68 So. 766. In Frank v. Williams, supra, the factual situation was similar to the case here. From the opinion of the Supreme Court of Florida, we quote [36 Fla. 136, 18 So. 353]:

"It is the well-established rule of law that any obligatory agreement, upon a good consideration, between the creditor and the principal debtor, to extend the time of payment for any definite period, will discharge the surety, if made without his consent. King v. [State] Bank, 9 Ark. 185; Fridenberg v. Robinson, 14 Fla. 130; 2 Brandt, Sur. § 343. The grounds upon which this rule is based are substantial, as the creditor has no right of his own volition to change the original contractual status of the parties, and impair any of the rights, legal or equitable, of the surety.

"The third plea alleges that after default in paying the account on the part of Cohen, the principal debtor, appellants closed and settled the same, and extended the time of payment thereof by taking Cohen's notes, without the consent of the guarantor, Williams. The plea distinctly alleges that time for the payment of the account was extended by taking the notes; and, if the allegation that the account was closed and settled does not show a discharge and satisfaction of the same, within the principle of Salomon v. [Pioneer] Co-operative Co., 21 Fla. 374, it is clearly shown that an extension of time for payment was given to Cohen without the consent of Williams. This plea, if true, presents a good defense, and the demurrer admits the facts pleaded to be true. As we will see further on, while the taking of the notes for an antecedent simple contract debt does not, in the absence of an agreement to that effect, discharge the debt, it does extend the time of payment of the same until the maturity of the notes."

■■ The debtor's promise to pay a debt for which he is already obligated is not, without more, consideration to sustain an agreement to extend the time for payment. Brinson v. Herlong, 121 Fla. 505, 164 So. 137. But the giving by the debtor of a negotiable trade acceptance, which the debtor was under no legal duty to give, supplied the consideration required to support the extension. The extension of time given by the creditor

to the debtor was valid and the guarantor was released.

■■ It is a general rule that payment or satisfaction of the principal obligation discharges the guarantor. 38 C.J.S., Guaranty, § 77, p. 1245; Union Trust Co. of Rochester v. Willsea, 275 N.Y. 164, 9 N.E.2d 820, 112 A.L.R. 1175; Murphy v. Green, 102 Fla. 102, 135 So. 531. The taking of a bill of exchange or promissory note for a debt will operate as payment if so intended. In many jurisdictions the receipt by the creditor of the instrument as payment will be enough. 70 C.J.S., Payment, § 23, p. 229. If such rule applied to the case before us there would be a further ground for holding the guarantor discharged as to the indebtedness represented by the trade acceptances. However, the Florida law requires that there be an express agreement that the giving of a negotiable instrument shall operate as a payment if it is to have that effect. Salomon v. Pioneer Co-operative Co., 21 Fla. 374; Frank v. Williams, supra. The rule in New York appears to be the same. Sawyer v. Marmaro, 134 Misc. 476, 235 N.Y.S. 631, affirmed 228 App.Div. 754, 238 N.Y.S. 924; Crane v. McDonald, 45 Barb. 354; Johnson v. Weed, 9 Johns. 310, 6 Am.Dec. 279. Although there seems to be conclusive evidence that the plaintiff regarded the trade acceptances as payment of the indebtedness they covered, there is no evidence of a mutual intent or express agreement that they should be treated as payment. Hence we base our determination that the defendant guarantor was discharged of his guarantee of the indebtedness evidenced by the trade acceptances upon the sole ground that the time for payment was extended without the consent of the guarantor.

■ The letter from the defendant to the plaintiff dated March 11, 1953, is not, as we read it, an admission that there was then in force a guarantee of payment of the debt evidenced by the trade acceptances, nor do we find anything in it that estops the defendant from asserting otherwise. On the contrary, the letter waives any prejudice that might otherwise result by reason of the signing by the plaintiff of the settlement agreement. It is expressly limited to any guarantee that was then in force and there was then no guarantee in force as to the trade acceptance obligations.

The judgment must be reversed so that the defendant will be relieved of the liability for the obligation represented by the trade acceptances. The credit of the bankruptcy dividend should be ratably apportioned between the trade acceptance indebtedness for which the defendant is not liable and the remaining indebtedness for which he is liable. The latter amount is $4,815.34 from which should be deducted 481534/917806 of the bankruptcy dividend of $1,489.60, or $781.53, leaving a balance of $4,033.81, for which sum judgment is here rendered with interest at 6% from July 9, 1953; the costs in the district court to be taxed against the appellant and the costs in this court to be taxed against the appellee.

Reversed and rendered.