**CAPITAL NATIONAL BANK OF TAMPA, Plaintiff,**

v.

**J. A. HUTCHINSON, Jr., Defendant.**

**Civ. A. No. 1368.**

United States District Court
S. D. Georgia,
Augusta Division.

Dec. 2, 1969.

Gwinn H. Nixon, Augusta, Ga.; James McDonough, Jr., Tampa, Fla., for plaintiff.

**1356**

Rowland Dye, Augusta, Ga.; Robert E. Knox, Thompson, Ga., for defendant.

## ORDER ON MOTION FOR JUDGMENT N.O.V.

LAWRENCE, Chief Judge.

The evidence in this case unfolds a tale of fraud, careless business practices and misplaced trust. In 1964 J. A. Hutchinson, Jr., sold a motel to Pitt Motel Corporation and accepted six notes as part of the purchase price, four in the amount of $10,000 and two in the amount of $5,000. The notes were endorsed by Intercontinental Motels, Ltd., owner of the stock of Pitt Motel, and by two principals in the former. After receiving the notes, Hutchinson endorsed same in blank and turned five of them over to a member of the Intercontinental group. He did so with the understanding that the latter would try to locate some bank which would discount them for defendant's benefit.

A representative of Intercontinental Motels got in touch with Capital National Bank which in good faith made a loan to Intercontinental in the amount of $40,000. It was secured by five of the purchase money notes. Intercontinental got the proceeds of the loan. Unaware of what had occurred, Hutchinson later sent the sixth Pitt Motel note to the Bank, requesting the proceeds to be forwarded to him. Plaintiff promptly lent an additional $10,000 but "on advice of counsel" delivered the proceeds of the new note to Intercontinental instead of to the defendant.

When Capital National's $50,000 loan to Intercontinental turned sour, a former officer of the Bank during whose tenure the transaction occurred, referred a man named Miller to the plaintiff in hope that a loan could be worked out with him whereby the proceeds would be used in part to pay off the Intercontinental loan. In December, 1964, the Bank lent Miller $90,000 on an *open* note. Simultaneously and as part of the understanding it transferred $50,316.67 from Miller's account and reflected a payment of $50,000 to the credit of Intercontinental on the liability ledger. The effect of the bookkeeping entries was to show payment in full of the Intercontinental indebtedness. Though the Bank did not recite the Pitt Motel notes as collateral in the Miller note it retained physical possession of same. It did not physically surrender or cancel the Intercontinental note. Plaintiff's witnesses asserted that the bookkeeping entries were that and nothing more and strongly denied that there was any intention to cancel the Intercontinental note or release the Pitt Motel collateral.

In lending $90,000 to Miller the Bank was throwing good money after bad. He pocketed around $38,000 out of the loan and soon went into bankruptcy. Intercontinental also bankrupted. The Bank and Hutchinson were apparently the only solvent parties in this whole affair.

Defendant contends that Intercontinental was released from its obligation and that such discharge had the effect of releasing the Pitt Motel collateral on which Hutchinson was endorser.

I let the case go to the jury, stating to counsel that the questions of law and plaintiff's right to recover as a matter of law, could be better determined in the light of the evidence and the jury's findings on the interrogatories submitted. At the trial I removed from its consideration the issue of whether there was an *express* agreement by Capital National as to payment by applying part of the proceeds of the Miller note to Intercontinental's indebtedness. However, an interrogatory was submitted as to whether under the facts there was an implied agreement as to payment of the Intercontinental indebtedness. The jury answered "yes."

Judgment was entered for defendant. Plaintiff moves for judgment N.O.V. and, in the alternative, for a new trial.

■ The point which counsel for both sides most strongly stressed, now as well as at the trial, is whether under Florida law the giving of a note can amount

to payment of an existing debt in the absence of an *express* or *special* agreement to that effect. This issue became the main theatre of war. Some of the early Florida decisions used language indicating that an express agreement is required. But I recall being impressed at the trial by the fact that the Florida law is hazy on the subject. At least two of the cases seemed to say that payment of an existing indebtedness as the result of acceptance by a creditor of a note may be inferred from all the facts. However, in Holcombe v. Solinger & Sons Co., Inc., 238 F.2d 495, 74 A.L.R.2d 728 the Court of Appeals for the Fifth Circuit ruled that "Florida law requires that there be an express agreement that the giving of a negotiable instrument shall operate as a payment if it is to have that effect. Salomon v. Pioneer Co-Operative Co., 21 Fla. 374; Frank v. Williams" [36 Fla. 136, 18 So. 351]. The Court did not cite King v. McConnell, 57 Fla. 77, 49 So. 539 (1909) in which the Supreme Court of Florida held that "Giving a note for an existing debt is not a payment of the debt, unless the note is received under an express agreement that it is a payment, or under circumstances from which an agreement may be fairly inferred to regard the note as payment, or unless payment in fact is made." The Supreme Court relied on *Salomon* and on Frank v. Williams, the identical decisions cited by the Fifth Circuit Court of Appeals in support of its statement that Florida law requires "an express agreement." I think I was probably correct in holding that in that State payment may be inferred from the surrounding facts and circumstances without an express agreement.

Was there in fact payment of the Intercontinental indebtedness and was it a jury issue? The facts of this case present what amounts to a novation involving a discharge of a debtor by substitution of a new debtor.

 Under general law an agreement to answer for the debt of another need not be in writing. Miles v. Hough-

taling, 32 A.D.2d 714, 300 N.Y.S.2d 5 (1969). No express undertaking is required to effect discharge of the original obligor through substitution of debtors. Leisner v. Finnerty, 252 Md. 558, 250 A. 2d 641 (1969); Utay v. Urbish, 433 S.W. 2d 905 (Tex.Civ.App., 1968). Substitution may be inferred from the circumstances and the conduct of the parties. Clark v. General Cleaning Co., 345 Mass. 62, 185 N.E.2d 749 (1962); Utay v. Urbish, supra; 66 C.J.S. Novation § 4, § 18. Whether there has been a substitution is a jury issue. W. Crawford Smith, Inc. v. Watson, 425 S.W.2d 276 (Mo.App., 1968). Florida law accords with what is said above. Murphy v. Green, 102 Fla. 102, 135 So. 531.

 With the issue of payment resolved in his favor defendant conceives that this finding wraps up the thing. Counsel contends that release of the Pitt Motel collateral necessarily followed as a matter of law and that he was relieved as endorser thereon. Instead of the end of the matter, as I now perceive things, the fact of such payment marks the beginning. The true question is not payment of the Intercontinental debt but what happened in law to the Pitt Motel collateral after the transaction between Miller and the Bank. True, in answer to one of the interrogatories the jury replied "no" to the question of whether the Bank "retained" the Pitt Motel collateral after discharge of the Intercontinental indebtedness. But this finding is more a conclusion of law than of fact and is, in my opinion, supported by neither.

The loan to Miller, the accompanying book entries and the nature and effect of the transaction show nothing more than a substitution of debtors. Although, as the jury found, Intercontinental was discharged on its note the actual debt was never really cancelled. It was merely transferred from the old to the new debtor. Plaintiff never parted with possession of the Pitt Motel notes and, as a matter of law, they were retained as security for the same debt now owed to the Bank by a different debtor. Such is

my conclusion after more mature consideration than the stress of trial sometimes permits judges to give to Erie-governed cases where foreign law is involved.

That Miller would make a gratuitous payment of $50,000 to the Bank for the benefit of Intercontinental or that, without any consideration paid by him, Hutchinson can enjoy a windfall from a transaction to which he was a complete stranger is as doubtful in law as it is deficient in reason. That Capital National might handle too informally the bookkeeping on the loan transaction is understandable but that it meant to throw its collateral to the wind is too much of a tax on credulity. As the Supreme Court of Florida observed in Fowler v. Lee, 106 Fla. 712, 143 So. 613 (1932), the assertion that there was a purchase of the note "as gratuity * * would be a stretch of the imagination that this court cannot indulge." Under Florida law where there is a substitution of debtors the new debtor succeeds to the rights as well as to the obligations of the old debtor. Fontainbleu Hotel Corp. v. Crossman, 5 Cir., 323 F.2d 937 at 942; Murphy v. Green, supra. Since there was a substitution of debtors, the result in law is inevitable, under the facts, that Intercontinental relinquished its claim upon the collateral which enured to Miller's benefit and that the Pitt Motel notes became security for his $90,000 note.

The substitution of debtors neither changed nor adversely affected Hutchinson's position. Plaintiff's release of Intercontinental on the latter's note did not release Intercontinental as a prior endorser on the Pitt notes and defendant would presumably have recourse as a subsequent holder against Intercontinental. (See § 66, 68 U.N.I.L.). Unfortunately, all the prior endorsers were insolvent. More unfortunately, defendant had chosen to endorse in blank his purchase money notes and place them in the hands of crooks. He made it possible for the latter to negotiate the notes to a holder in due course. It is a most distressing thing that Hutchinson not only realized nothing on his notes but by reason of his naivete ends up being sued as endorser. But as unconscionable as was the fraud perpetrated upon him, it would merely compound the unconscionable to make the Bank absorb the loss resulting from his faith in thieves.

The issue of whether or not plaintiff released the Pitt notes as collateral was improperly submitted to the jury. I hold that as a matter of law where a creditor substitutes one debtor for another by accepting the latter's promissory note in satisfaction of the former's and where the creditor retains physical possession of collateral put up by the original debtor who does not object to such retention and where there is no ostensible consideration running to the new obligor from the creditor or from the original debtor then the presumption is conclusive that the collateral was intended by all parties to the substitution to secure the new note.

What has been said as to the first five notes does not apply to the sixth. The jury found that Capital National was holder in due course and acted in good faith as to five notes. Florida Statutes, 1962, Sec. 674.54.[1] As to the sixth note, which the Bank accepted in March, 1964, the jury found that it was taken in bad faith by the plaintiff, a finding amply supported by the evidence.

The judgment for the defendant entered on July 31, 1969, is set aside and judgment is rendered for plaintiff against defendant in the amount of $40,000 with interest from June 8, 1965, together with costs.

1. This case is governed by the Uniform Negotiable Instruments law in Florida. The Commercial Code did not become effective in that State until 1967. The five notes were regular on their face; plaintiff became the holder before they were in default and it gave value for them.